Harburg v. Kumpf.

---

HARBURG, Executor, v. KUMPF, Appellant.

Divison One, June 14, 1899.

1. **Negotiable Note**: EXTENSION: EFFECT ON SURETY. The promise of a holder to extend the time of payment of a note after maturity for a definite period, based on no other consideration than the promise of the maker to keep the money during that period and pay interest thereon according to the legal tenor and effect of the note, is not supported by a valid consideration, the promise to extend is not binding, and if there is a surety on the note he is not discharged, although the extension was made without his knowledge or consent.

2. ———: REDUCTION OF INTEREST. The evidence is reviewed and it is held that it does not show that the principal maker desired to avail himself of his right to pay the note, but was induced, by the reduction of the interest by the holder from eight to seven per cent, to retain the money, and hence it is not decided whether the reduction in the interest was such a change in the contract as would release the surety from the payment of the note.

*Appeal from Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge. .

AFFIRMED.

Powell & Powell for appellant.

(1) Henry C. Kumpf signed the name on the back of said note as an indorser for George Kumpf, with the knowledge of Sophia Harburg that he was merely an indorser and surety. Any agreement between Sophia Harburg and George Kumpf that changed the terms of contract, extension of time of payment or change of rate of interest without the consent of Henry C. Kumpf, would release him whether he be indorser or surety. Smith v. Rice, 27 Mo. 505; 2 Brandt on Suretyship (2 Ed.), sec. 388; Post v. Losey, 111 Ind. 85; Warden v. Ryan, 37 Mo. App. 468; Schuster v. Weiss, 114 Mo. 167. (2) An agreement for extension need not be in writing but may be by parol. Moore v. Bank, 22 Mo. App. 693; Brooks v. Wright, 13 Allen 77; Reynolds v. Barnard, 36 Ill. App. 223. (3) The decisive question in determining whether the surety is released by an extension, granted by the holder of the note to the principal maker, is this: Was the right of the creditor to proceed to the collection of the note suspended during period of extension? If it was, then the extension releases the surety unless made with his consent. Gould v. Robson, 8 East 576; Hart v. Hudson, 6 Duer 306; Stuart v. Lancaster, 84 Va. 772; Chickasaw v. Pitcher, 36 Ia. 593. This contract of extension was mutually binding on George Kumpf to pay interest for one year and on Mrs. Harburg to allow him to keep the money for such period. She could not have collected, nor could he have paid the note during such period of extension. Dodgson v. Henderson, 113 Ill. 360; Fowler v. Brooks, 13 N. H. 246. (4) It was a valuable privilege to Mrs. Harburg to loan her money for a definite period of one year and be assured of her interest during that entire period, and it was a valuable privilege to George to be able to retain the money for a definite period. This is a valid and binding mutual contract for an extension

and is a sufficient and valuable consideration. Reynolds v. Barnard, 36 Ill. App. 218; McComb v. Kittridge, 14 Oh. 348; Faucet v. Freshwater, 31 Oh. St. 637; Dodgson v. Henderson, 113 Ill. 360; Fowler v. Brooks, 13 N. H. 246; Benson v. Phipps, 29 S. W. Rep. 1061. (5) The fact that the note had matured prior to the extension on December 13, 1890, can make no difference. The effect of the extension was to release the surety. Wheaton v. Wheeler, 27 Minn. 466.

GRANT I. ROSENZWEIG for respondent.

An agreement to extend is invalid and not binding if it lack either definiteness or sufficient consideration. An agreement to extend for a year, the note to draw for the extended term the interest provided in face of the note, in absence of some outside consideration, has not sufficient consideration in law to make such agreement binding. Same is true of an extension for given time at a reduced rate—and is still more true of a reduction without definite time. Colebrook Collat. Sec., sec. 248; Jones v. Brown, 11 Oh. St. 601; Edwards v. Bedford, 41 Oh. St. 17; Crossman v. Wohlleben, 90 Ill. 537; Flynn v. Mudd, 21 Ill. 323; Hume v. Mazelen, 84 Ind. 574; Gipson v. Ogden, 100 Ind. 25; Davis v. Stout, 126 Ind. 12; Deberry v. Adams, 9 Yerg. 52; Ahlstrom v. Fitzpatrick, 17 Mont. 295; Morgan v. Thompson, 60 Ia. 280; Duncan v. Reed, 8 B. Mon. 382; McInerney v. Lindsay, 97 Mich. 238; Lowman v. Yates, 37 N. Y. 600; Vilas v. Jones, 10 Paige 76; Gahn v. Niemcewiz, 11 Wend. 312; Bowditch v. Chickering, 139 Mass. 283; Potter v. Green, 6 Allen 442; Tinner v. Williams, 73 Me. 466; Wilson v. Powers, 130 Mass. 127; Bank v. Love, 62 Mo. App. 378; Burns v. Davis, 67 Mo. App. 210; Cox v. Jeffries, 73 Mo. App. 417; Owens v. McKenzie, 133 Mo. 323; Wolz v. Parker, 134 Mo. 463; Blackmore v. Granberry, 39 S. W. Rep. 229.

VALLIANT, J.—This is a suit on a negotiable promissory note made by George Kumpf and Henry C. Kumpf to

the order of Sophia Harburg, plaintiff's testatrix, for $5,000, dated December 13, 1888, due one year after date, bearing interest from date at 8 per cent per annum, interest payable semiannually. Both makers were sued, but George Kumpf made no defense. Henry C. Kumpf pleaded that the consideration for the note was money borrowed of Sophia Harburg by George Kumpf for his own use, that Henry C. Kumpf signed it as security for George, and that Sophia Harburg knew that fact when she took the note; that afterwards the payee and George, without the knowledge or consent of Henry, made an agreement whereby the payee, "for a good and valuable consideration, extended the time of payment for one year from December 13, 1890," and that that agreement was executed, and George paid the interest as agreed. And that the payee and George, without the knowledge or consent of Henry, for a good and valuable consideration, agreed to reduce the rate of interest in the note from eight to seven per cent from December 13, 1893, and to extend the note to June 13, 1894, and that agreement was carried out by George paying interest at 7 per cent up to the date last named. For those alleged alterations in the contract the defendant Henry claims that he as surety was discharged. The reply put the matters pleaded in the answer in issue. There was a trial by jury, verdict and judgment against both defendants for $5,213.12 from which Henry C. Kumpf alone, after due course, brings the cause here for review on appeal.

The evidence left some room to question what the relation of Henry C. Kumpf to the note was, and if he was only surety as he claimed, whether or not the payee knew it. But the theory of the instructions given and refused shows that the case was tried on the assumption that appellant was surety as he claims, and that the payee of the note knew it, and under the view of the law of the case which we take, it will not impair the plaintiff's rights if we make the same assumption.

The answer does not state, unless it be inferentially, what

the consideration was for the alleged new features attached to the original contract, nor does it state when the payments of interest alleged to have been made, were made, that is, whether or not they were made in advance.

The evidence shows that the interest was not paid in advance and there was no consideration for the alleged agreement for extension unless, as contended by counsel for appellant, the mutual assent of the parties to the extension created a binding obligation on the one not to demand payment within the time specified, and on the other to keep the money and pay interest for that period. The evidence of defendant was to the effect that on December 13, 1890, George Kumpf paid the interest due on that date, and the parties then agreed to extend the notes for a year, and afterwards on June 13 and December 13, 1891, defendant George paid the interest due on those dates respectively according to the tenor of the note.

I. The effect that an extension of a note by agreement between the holder and the principal debtor will have on the surety's obligation is no new subject in the courts of this State. In Stillwell v. Aaron, 69 Mo. loc. cit. 542, per HENRY, J., it is said: "It has uniformly been held in this State, that if a creditor, for a valuable consideration, make an agreement with the principal debtor which suspends his right of action on the demand for a definite period of time, without the consent of the surety, it operates to discharge the surety." And in support of the proposition citations are given running through our books from 19 Mo. to 68 Mo. And in that case it is also held that payment of interest in advance is a sufficient consideration to support the contract for extension. The same doctrine is declared in other cases: St. Joseph F. & M. Ins. Co. v. Hauck, 71 Mo. 465; Mer. Ins. Co. v. Hauck, 83 Mo. 21.

In West v. Brison, 99 Mo. loc. cit. 693, it is said: "Where the surety claims to have been discharged by reason of an

agreement between the creditor and the principal debtor, extending the time for payment, it must appear that the agreement was upon a valuable consideration, and that the extension was for a definite period of time."

In Barrett v. Davis, 104 Mo. loc. cit. 558, it is said: "One of the reasons of this rule is found in equitable considerations, growing out of the surety's right to be subrogated to the creditor's, at any moment, by payment of the debt to the latter. . . . We refer to its reason merely to add that the principle underlying it demands that such a contract, to be effective as a release of the surety, must be one creating a valid and enforcible obligation against the creditor with respect of the enforcement of his claim against the principal debtor."

In Petty v. Douglass, 76 Mo. 70, it was held that payment of interest then due on a matured note and part payment of the principal, was no valid consideration for an agreement to extend, and the surety was not thereby discharged.

In Owings v. McKenzie, 133 Mo. 323, it was held that an agreement to extend for which there was no consideration, except the legal consequence of accruing interest according to the tenor of the note, was not valid.

In Wolz v. Parker, 134 Mo. 458, there were several notes, one was due in May, 1893, and one in April, 1894. In May, 1893, the holder agreed with the maker that if he would pay the first note in January, 1894, he would extend the second note until the fall of 1894; the maker paid the first note in January, 1894. It was held that there was no consideration to support the agreement, since the maker only undertook in the agreement for the extension to do what he was already bound to do by his note, citing, Parsons, Cont. (7 Ed.), star page 437, and 3 Am. and Eng. Ency. of Law, 834.

The Supreme Court of Massachusetts have held that a written agreement to extend for a definite period and to apply part of the interest towards the payment of the principal in consideration that the principal debtor pay the interest past

due and continue to pay interest as it accrued according to the terms of the note, which the court said was in effect an agreement to extend at a reduced rate of interest, was an agreement without consideration, and not binding, and that the surety was not discharged. [Wilson v. Powers, 130 Mass. 127.] We cite this case because it covers both points of appellant's contention.

It appears from cases cited in the brief of the learned counsel for appellant that there are some courts in this country that hold in accordance with their contention, but the majority of the courts seem to have taken the view of the subject that this court has always taken, and that doctrine has been so long and so often declared by this court that it would be unjust to a commercial people who have shaped their affairs in accordance with it, to change the rule now, even if the doctrine contended for by appellant appealed more strongly than it does to our sense of right and justice.

We hold therefore that the promise of a holder to extend a note after maturity for a definite period, based on no other consideration than the promise of the maker to keep the money during that period and pay interest thereon according to the legal tenor and effect of the note, is not based on a valid consideration, the promise to extend is not binding, and if there is a surety on the note he is not discharged, although the attempted agreement for extension was made without his knowledge or consent.

II. Appellant's second proposition is that he was released because on December 13, 1893, when the note had been running five years past due, by agreement between the holder and the principal debtor, the interest was reduced from eight to seven per cent, and the note extended six months.  To state this proposition in the form in which it must be stated to give it the appearance of a contract it is that on December 13, 1893, the principal debtor was unwilling to keep the money longer at the rate of interest called for by the note, and was

ready and desired then to pay it, but as an inducement to him
to keep it for six months longer the creditor agreed to reduce
the rate of interest to seven per cent, and in consideration of
that concession the principal debtor, without the consent of
the surety, agreed to and did keep the money. ·

Assuming for the present that that would be such a
change in the contract as would release the surety, the evi-
dence does not tend to prove an agreement to that extent.
This is the evidence on that point:

William Harburg, plaintiff's witness in his own behalf,
on cross-examination by defendant's counsel:

"Q.  Well, coming on down to this agreement made in
1893, there was an agreement made in 1893, whereby you
reduced the interest on that note from 8 down to 7 per cent,
was there?  A.  There was no agreement made at all.  He
came in and talked about 8 per cent, he said he wanted 7 per
cent.  I said I will see my mother and ask her about it, and
she said to take 7 per cent; that was all the agreement.

"Q.  She said to let him keep the money for seven per
cent?  A.  Yes, sir.  That was all the agreement that was
made.

"Q.  You didn't call on him for any interest on that note
until the next June interest payment?  A.  I don't remember
any more.

"Q.  It was understood the note should run from Decem-
ber 13, 1893, for the next six months at the rate of seven per
cent?  A.  I suppose so; yes, sir.

"Q.  George requested it, and your mother agreed to it
that the note might run from December 13, 1893, to June 14,
1894, at seven per cent?  A.  She didn't say any date.  He
just asked for seven per cent."

Re-direct examination by plaintiff's attorney:

"Q.  Upon the occasion of this talk about seven per cent
you spoke of, did he offer to pay you any money at that time?
A.  No, sir; he didn't.

"Q. Did he offer it back and you refused to accept it? A. No, sir."

George Kumpf, one of defendants, on examination in chief testified:

"Q. There is also an agreement on the back of the note to the following effect: 'This note bears seven per cent interest after December 13, 1893.' With whom did you make that agreement? A. With Mr. Will Harburg.

"Q. What was that agreement? A. Why, I told him I thought the rate of interest was too high, I wanted the money for less, and he came around shortly after that and told me we could have the money for seven per cent.

"Q. Then, what agreement did you make with reference to it? A. That the note should bear interest for the next six months for seven per cent.

"Q. State what there was about that. A. Well, he wanted the money semiannually, so that that would have been the time. That was so long as it would run, that was my understanding of it. . . .

"Q. By the Court: I was busy when you were talking about the reduction of the interest to seven per cent. Repeat that again?

"A. Why, I told Mr. Harburg I thought the rate was too high, eight per cent, and I wanted him to make it less, and a short time after that he came around and told me that was agreeable, that the rate should be seven per cent from that time on, it would be seven per cent.

"Q. Was that before the note was due or after it was due? A. O, after the note was due.

"By Mr. Powell: Q. The reduction of one per cent from eight to seven, that was after the note was due, was it, several years? A. Yes, sir.

"Q. You told him that the rate of interest was too high, and he told you thereafter it would be seven? A. Yes, sir.

"Q. Would be seven thereafter? A. Yes, sir."

Defendant read from deposition of plaintiff as follows:

"Q. You never went to Henry C. Kumpf for the interest, did you? A. No, sir; I always went to George's office. Q. What rate of interest did he pay you? A. Eight per cent at first, but he didn't pay eight per cent all the time—paid seven per cent. Q. When did you agree with him to take seven per cent? A. There was no agreement; he just said that was too much interest—said he wanted it at seven per cent; I asked mother about it at home and she said he could have it at seven per cent. Q. After that George paid the interest on that note at the rate of seven per cent instead of eight per cent? A. Yes, sir. Q. Interest along that was paid up to June 13, 1894, was at seven per cent, was it? A. I don't remember. Q. And your mother consented to that, did she—she, or you for your mother, agreed with George to let him have the money at the rate of seven per cent instead of eight per cent? A. Yes, sir. Q. Then it was agreed that the note should only draw seven per cent instead of eight per cent, and your mother consented to that, did she—only to draw seven per cent from December the 13th, 1893—did she? A. Yes, sir. Q. After you made that agreement to let George pay the interest at the rate of seven per cent you never did raise it to eight per cent did you? A. No, sir. Q. Then it was agreed that after December the 13th, 1893, the note should only draw seven instead of eight per cent, and your mother consented to that, did she? A. Yes, sir."

There is nothing in this testimony to indicate that the debtor desired to avail himself of his right to pay the note but was induced by the reduction of interest to retain it for either a definite or an indefinite period; it was a mere gratuitous indulgence on the part of the creditor. The surety had the right in spite of that agreement to pay the note at any time and be subrogated to the rights of the creditor.

We say that a surety's obligation is to be construed *strictissimi juris,* which means only that his contract can not be

altered without his consent, and that he is bound only to the extent that he agreed to be bound. But there is nothing in the nature of a surety's obligation that entitles him to special guardianship of the law more than other debtors. There is no more reason, in law or morals, for allowing a surety to evade his obligation than there is to allow the principal debtor to do so. The great bulk of negotiable paper on which the commerce of the world is conducted, is taken on faith in the surety, and whilst both justice and policy demand that he should be held only to the contract he himself made, and be discharged if there is a material change in it, yet that same justice and policy forbid that he should be relieved on a mere fanciful theory.

The instructions given and refused show that the circuit court tried this cause in conformity to the law as herein expressed and the judgment of that court is affirmed.

All concur.