FANNING, Respondent, vs. MURPHY, Appellant.

*December 14, 1905—January 9, 1906.*

*Contract for benefit of third person: Privity: Modification: Convey-
ance of land: Discharge of original promisor: Suretyship: Pay-
ment by one surety: Rights against co-surety: Duty of creditor:
Subrogation: Discharge of surety by extension of time: Valid-
ity of agreement to extend.*

1. If a person for a consideration moving to him from another
   agrees to pay that or any other's debt to a third person, the
   law, at once, operating upon the acts of the immediate parties
   to the transaction, supplies the essentials of privity between
   such person and such third person, establishing binding con-
   tractual relations between them even though such third party
   was a stranger to, and had no knowledge of, the transaction.

2. In case of the establishment of contractual relations in the man-
   ner indicated in the foregoing rule, they cannot be subse-
   quently varied by any agreement between the immediate par-
   ties to the transaction not consented to by the third party.

3. The rule last above stated applies to a case where one takes a
   conveyance of real estate, agreeing as part consideration there-
   for to pay the debt of his grantor or that of some other person
   to a third party.

4. In case of such an agreement as is indicated in the last fore-
   going rule, the new promisor is the principal debtor as regards
   both his immediate promisee and the third party as well, so
   that any agreement made between the second promisor and the
   original promisee, prejudicial to the original promisor, oper-
   ates to discharge the latter the same as in any case of an
   agreement between the principal debtor and the creditor where
   there is a surety.

5. Findings of fact and conclusions of law should be confined
   strictly to performance of the duty imposed by sec. 2863, Stats.
   1898. Such findings should cover singly and in concise lan-
   guage the pleaded facts without any addition by way of argu-
   ment or recitation of evidence.

6. It is essential to the preservation of a surety's rights against
   his co-surety that he should pay the indebtedness under com-
   pulsion.

7. In case of a principal debtor, a surety, the debt being in default,
   and of the latter paying the same for his protection, without

being coerced into doing so, such payment is compulsory within the rule last aforesaid.

8. If a surety for his protection pays off the debt for which he is liable, but does so in the form of a purchase, taking an assignment of the securities to himself, or to some third person for his use, having in mind, however, only the better protection of his rights of subrogation and contribution, the transaction amounts to a payment as to such rights.

9. A creditor entitled to resort to a principal debtor and a surety for the discharge of his claim, owes no duty to the latter of active vigilance to collect the debt of the principal. The law imposes the duty of activity in such circumstances on the surety rather than on the creditor.

10. At all times after the maturity of an indebtedness, for the payment of which there is a principal and sureties, any one of the latter may pay off the same for his protection and enforce his rights of subrogation and contribution.

11. In case of a principal debtor and surety, any valid extension of the time of payment of the debt at the request of the former, without the consent of the latter, discharges the surety.

12. It is essential to a valid extension of the time of payment of an indebtedness under the foregoing rule, that the transaction should involve all the essentials of a binding contract, effectually tying the hands of the creditor as regards enforcing payment of the debt until the expiration of the agreed time. There must be a reasonably definite time agreed upon and an agreed equivalent rendered for the extension, and that equivalent must be a real consideration,—something more than the payee would be entitled to in case of a mere indulgence of the payor by allowing the debt to run past due.

13. A mere request for the extension of the due date of a debt at the contract rate of interest and consent thereto, does not satisfy the essentials of a binding contract for an extension within the rules above indicated.

[Syllabus by MARSHALL, J.]

DODGE, J., is of the opinion that, while a mere promise by a creditor to grant extension of time, however definite, is of no validity unless there is some new consideration therefor, either a benefit to the creditor or a detriment to the debtor, yet a definite promise by the debtor to retain the money at interest during a specified term is a sufficient new consideration to support an agreement by the creditor to extend.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

A consolidated action to foreclose a mortgage and obtain a judgment enforcing the personal liability of one claimed to be liable for the mortgage indebtedness to the plaintiff as a co-promisor upon the note secured by the mortgage and in the mortgage as well.

April 15, 1890, *J. T. Murphy,* D. C. Sullivan, M. Murphy, and *W. R. Fanning* mortgaged lands owned by them to the Superior & Duluth Loan & Debenture Company to secure the payment, three years after the date of such mortgage, of a $5,000 note of the mortgagees with interest thereon at the rate of eight per cent. per annum, payable semiannually. The mortgage contained all the provisions common to such instruments, and also this:

"And the said parties of the first part, for themselves and their heirs, executors, administrators, and assigns, hereby covenant and agree to and with the said party of the second part, its successors and assigns, as follows, to wit: that they will pay to the said party of the second part, its successors and assigns, the sum of money above specified, with interest accruing thereon, at the times and in the manner stated in said note and coupons, together with all costs and expenses, if any there be."

September 18, 1893, the mortgage and note were for value assigned to the Northern Trust Company. October 14, 1896, such company for value paid by the plaintiff and at his request assigned the note and mortgage to Mary A. McNealy, and on October 19th she assigned the same to him. The assignments were recorded, except the last. The one to Mary A. McNealy was made solely for the benefit of plaintiff. She was used as a convenient instrument to better preserve, as he supposed, his rights as against his co-sureties. April 16, 1890, the mortgagors conveyed the mortgaged premises to W. R. O'Hearn, he assuming and agreeing to pay as part consideration for the property the mortgage indebtedness. April

18, 1890, he conveyed a two-thirds interest in the premises to R. C. Jones and Edgar A. Le Clair, they as part consideration therefor assuming and agreeing to pay a corresponding proportion of the mortgage indebtedness. June 5, 1890, said Le Clair conveyed his interest in the premises to said O'Hearn and Jones, they assuming and agreeing as a part consideration therefor to pay one third of said indebtedness. Subsequent to O'Hearn's taking an interest in the property he, acting for himself and Jones, April 16, 1890, paid and took up some past-due interest coupons. April 11, 1893, O'Hearn on behalf of himself and Jones, they being then sole owners of the mortgaged premises, applied to the holder of the note and mortgage for an extension of the time of payment for one year, which application was granted. The transaction in respect thereto consisted of a mere request for an extension and consent thereto, the agent of the holder of the note, assuming to act pursuant to such request and consent, indorsing on the back of the note these words:

"This note, by mutual agreement, is extended for one year from April 15, 1893, at 8 per cent. payable semiannual, interest having been paid to April 15, 1893, and all coupons surrendered."

Later, after the Northern Trust Company became the owner of the securities, default was made in respect to both principal and interest, whereupon under threat of collection thereof against the property of the plaintiff being forced, and upon the promise of *J. T. Murphy* to pay his proper proportion as soon as he was able to do so, plaintiff paid the amount due on the note and caused the securities to be assigned to Mary A. McNealy, he being advised by counsel to that course as the one best calculated to protect his rights against other parties liable upon the paper. On May 28, 1902, he commenced an action against *J. T. Murphy* to recover the proportion it was supposed he should bear of the burden of discharging the mortgage indebtedness, alleging that plaintiff's other

·co-makers on the note were nonresidents or insolvent. July 28, 1902, plaintiff commenced an action against all persons interested in the real estate and all those who were supposed by the plaintiff to be personally liable for the mortgage indebt·edness or any part thereof, to foreclose the mortgage and enforce such personal liability. The two actions were consolidated and tried as one.

The court, upon the evidence, found facts as above indicated, and also all facts necessary to a judgment of foreclosure in the action, and the following: The only party appearing and defending in the action was *J. T. Murphy.* Interest was paid upon the note to September 1, 1895. After plaintiff purchased the note and mortgage *J. T. Murphy* on several occasions promised to pay his proper proportion but neglected to do so. That resulted in the commencement of the two actions. The parties liable, or that were liable, for the payment of the mortgage indebtedness in addition to the plaintiff are *J. T. Murphy,* D. C. Sullivan, M. Murphy, W. R. O'Hearn, R. C. Jones, and Edward Le Clair. D. C. Sullivan and M. Murphy are nonresidents of the state and have been for five or six years. Defendants O'Hearn and Le Clair are insolvent and have been since 1893. Said Jones was insolvent from the year 1893 to the time of his death, which occurred prior to the commencement of this action. On April 18, 1904, there was due on the note and mortgage, including back ·taxes, $9,272.07. The amount which plaintiff paid for the note and mortgage, with °interest thereon from the time of such payment to the filing of the finding, less $100 paid to him for interest, was $7,571.17. O'Hearn and Jones gave no consideration for the extension of the note granted at their ·request. The summons and complaint against *J. T. Murphy,* in the action for contribution, was served upon him within six _years after *Fanning* paid or purchased the note. The summons and complaint in the foreclosure action was served upon ·said *Murphy* more than six years after such payment. The

two actions were consolidated at *Murphy's* request without prejudice to the date of the commencement of the action as regards his personal liability being considered to be May 28, 1902.

On such findings the court found as matters of law, that by reason of the provisions of the deeds to which O'Hearn, Jones, and Le Clair were parties they became principal debtors and *J. T. Murphy*, M. Murphy, Sullivan, and *Fanning* sureties upon the note as between the makers thereof and themselves; that there was no binding contract extending the time for the payment of the note; that *Fanning* was entitled to a foreclosure judgment, as prayed for in the complaint, to reimburse him for the amount which he paid for the note and mortgage, and six per cent. interest thereon from the time of such payment, and all sums paid by him for taxes, with interest thereon, and solicitor's fees and costs and disbursements in the action, and further entitled to a judgment for deficiency against defendant *Murphy* for one half of the amount of whatever deficiency there might be. Judgment was entered accordingly, from which defendant *Murphy* appealed.

*John Brennan,* attorney, and *Louis Hanitch,* of counsel, for the appellant.

*H. H. Grace,* for the respondent.

The following opinion was filed January 9, 1906:

Marshall, J. There are many decisions of this court as regards the status of one who has for a consideration moving to him from another agreed to pay the latter's debt to a third person, such third person being a stranger to the transaction, such as the agreement involved here where the grantee of realty assumed and agreed to pay the indebtedness of his grantor or some other party secured upon such property as consideration in whole or in part for the conveyance. The subject was last fully discussed by this court in *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440, the most significant

of the previous decisions of the court being referred to. It was there said that upon the transaction being completed between the parties thereto the promisor becomes absolutely bound to the third person regardless of whether he has any knowledge of the matter or renders any consideration for his new security; that no privity between the promisor and the third party is essential to the liability, except that which the law operating upon the acts of the parties creates. The idea that the law so operating will create such privity, enabling the third person to enforce by action at law the promise made for his benefit, and that nevertheless his status as regards the promisor may, after the happening of the transaction creating it, be changed without his consent, was rejected. The relations existing between the promisor and the promisee in such circumstances, it has been said, are those of principal and surety,—that the promisor takes the place of his promisee, the latter becoming surety for him, so that in the event of such promisee paying the debt he has his remedy over against his promisor. *Stiles v. Thompson,* 98 Wis. 329, 73 N. W. 774. Whether, in such circumstances, as regards the creditor the status of the original debtor is changed to that of a surety, does not seem to have been heretofore decided by this court.

In those jurisdictions where the nature of the relations between the promisor and a third person is held to be the same as it is here, in respect to the former being equitably and legally liable to the latter, it has been held that a variance of the original contract between a third person and the debtor without the consent of the original debtor discharges the latter from all liability, where a similar variance by agreement between any principal obligor and obligee would discharge the surety, it being said in terms or in effect that the third person upon being informed of the relations between the parties to the transaction affording him the additional security becomes in duty bound to protect the interest of the original debtor to the extent of dealing with the person who has agreed

to take his place as the one primarily liable for the debt as if the sole liability of the original debtor were that of a mere surety. *Home Nat. Bank v. Estate of Waterman,* 134 Ill. 461, 29 N. E. 503; *Calvo v. Davies,* 73 N. Y. 211; *Colgrove v. Tallman,* 67 N. Y. 95; *Palmer v. Purdy,* 83 N. Y. 144; *Grow v. Garlock,* 97 N. Y. 81; *Guild v. Butler,* 127 Mass. 386; *Union Mut. L. Ins. Co. v. Hanford,* 143 U. S. 187, 12 Sup. Ct. 437; *Wayman v. Jones,* 58 Mo. App. 313; *Spencer v. Spencer,* 95 N. Y. 353; *George v. Andrews,* 60 Md. 26; *Metz v. Todd,* 36 Mich. 473; *Commercial Bank v. Wood,* 56 Mo. App. 214. The federal supreme court in the case cited, speaking of the doctrine which obtains here, that one who is the beneficiary of a promise made by the grantor of mortgaged premises to pay the mortgage indebtedness, that one being a stranger to the transaction, may enforce the promise at law, and that the promise is irrevocable without his consent, said:

"Where such is held to be the relation of the parties, the consequence must follow that any subsequent agreement of the mortgagee with the grantee, without the consent of the grantor, extending the time of the payment of the mortgage debt, discharges the grantor from all personal liability for that debt."

In *Wayman v. Jones, supra,* it was said that "there is no distinction between a suretyship created with the consent of the creditor and that which arises by operation of law. The principle is applicable alike in both cases, as is abundantly shown by the authorities."

The learned counsel for appellant as a basis for their claim that appellant was discharged from all liability for the payment of the mortgage indebtedness by the transaction mentioned in the statement between O'Hearn and the owner of such indebtedness, contend that the law is as above stated, and to that extent it seems that counsel's position is sound. Therefore, at the time of the alleged extension of the time for

payment of the mortgage indebtedness, as regards all parties to the litigation, W. R. O'Hearn, R. C. Jones, and Edgar A. Le Clair were principal debtors, and *J. T. Murphy*, D. C. Sullivan, M. Murphy, and *W. R. Fanning* were sureties. However, if the agreement for the extension was not binding for want of a consideration to support it, if notwithstanding such agreement such owner was left free to enforce payment of such indebtedness after the due date thereof, according to the conditions of the note, and the sureties were free to take up the same and protect themselves from loss in the ordinary way in such cases, the entire groundwork of appellant's position fails, leaving nothing in the record affecting, prejudicially, his liability to respondent as a co-surety, except some minor matters which are inefficient to affect the situation, as we shall see.

We do not overlook the criticism of counsel upon the failure of the trial court to find distinctly as to whether respondent bought the note, leaving no enforcible claim against appellant, except upon the note itself, and the importance of the statute of limitations, if such were the fact, or whether he paid it under compulsion, creating a liability upon the part of appellant to contribute his proportionate share as co-surety. The findings in this respect, and in general, as regards the judicial duty under sec. 2863, Stats. 1898, as explained in *Farmer v. St. Croix P. Co.* 117 Wis. 76, 93 N. W. 830, are deficient.    They are considerably incumbered with mere evidentiary matters, instead of such matters being entirely omitted, as they should be, and only facts in issue and pleaded facts and the resulting conclusions of law being included. Findings should never be put in the form of a *resumé* of the evidence, as they often are, nor should they include matters of argument in support of the conclusions.    Mischief in that regard, in the opinion of the writer, is the natural result of permitting counsel for the prevailing party to formulate the manner in which the court shall pronounce its decision.

Counsel however able and however appreciative of the duty of the court to speak judicially in rendering its decision, and as the statute commands, are counsel still, and the product of their efforts to present to the court a form for its decision is very likely to partake, significantly, of partisan features: to be in the nature of findings of fact supported by evidence and argument with such findings so obscured by, or involved in, other matters as to require diligent search therefor in order to enable one to discover the same. It is a mistake, as it seems, to suppose that such features add to the stability of the judgment. Findings, covering in logical order the pleadable and pleaded facts, in concise and strictly judicial language, as the law requires, are by far the safest basis for a judgment to rest upon.

On the point raised by counsel as to whether respondent came by the note and mortgage by purchase with the idea of making an investment, it seems from the evidence and findings that his whole purpose was to protect himself against loss, so far as practicable, by taking up the securities and resorting to the mortgaged property and the liability of his co-sureties for reimbursement. He did not act in the matter until the persons primarily liable were in default, nor until he was pressed for payment by the holder of the note and menaced with the probability of his property being taken in some way to discharge the debt, if he did not provide for it. True, the transaction was in the form of a bargain and sale and respondent testified repeatedly that he bought the securities, but he also said over and over again, in terms or in effect, that he acted under advice of counsel and had only in mind protection of himself against loss. There is nothing to indicate that he bought the paper as an investment, or paid it voluntarily. It seems very clear that, as regards the liability of his co-sureties as contributors, his act in taking up the note and mortgage extinguished the original debt.

True, it was not permissible for respondent to voluntarily

pay the note and then hold his co-sureties liable. Compulsory payment was essential to their liability, but the surety, in order to satisfy that, is not required to wait until the creditor extorts payment from him. As soon as the principal debtor makes default the surety may pay the indebtedness and seek contribution of his co-sureties, if there be such. Payment under those circumstances is, in legal effect, compulsory. In contemplation of law, the act is characterized by a request from the co-surety, if there be such, to the one acting in the matter to pay the debt, and a promise on the part of the former to contribute his proper proportion. Thus a co-surety is liable to contribute to the one making the payment, both upon the ground of equitable and legal obligation. 1 Brandt, Suretyship (3d ed.) § 319; 27 Am. & Eng. Ency. of Law (2d ed.) 485, and cases cited. The idea is that whenever a surety pays a debt because his liability has become fixed to do so by his principal's default, it is not voluntary, and when in such circumstances he takes up the note for the sole purpose of discharging his obligation as surety and preserving his rights of subrogation and contribution the mere fact that he does so in the form of a purchase of the securities does not militate against its being in fact a payment for the purposes mentioned.

The learned counsel for respondent fails to make clear in his brief the theory, as he views the matter, upon which the liability of appellant was adjudged, respecting whether the learned trial court held that respondent paid the note or bought it as an investment relying upon the verbal promise of appellant to pay his due proportion. The findings are very indefinite in respect to the matter. We agree with the learned counsel for appellant as to its being very difficult to see clearly from the decision the supposed underlying principles of it. The recovery cannot be sustained upon the mere obligation of appellant to respondent as co-surety, without there was, in effect, at least, a payment of the indebtedness by

respondent under compulsion, as before indicated. As it seems to us, however, the essential facts in that regard are established by the evidence.

It is suggested by counsel that appellant was released by laches of the holder of the note and mortgage, in that he did not proceed with diligence to collect the indebtedness after the same became due. The conclusive answer to that is, as counsel for respondent suggests, the payee of an instrument having a principal obligor and surety owes no duty of active vigilance to the latter to enforce collection of the indebtedness. The way is open to the surety at any time after default of his principal to pay the debt and reimburse himself by enforcing the obligation of such principal and the co-sureties, if there be such. *Harris v. Newell,* 42 Wis. 687; *Updike's Adm'r v. Lane,* 78 Va. 132; *Alexander v. Byrd,* 85 Va. 690, 8 S. E. 577.

"The surety has no right to say that he is discharged from the debt . . . if all he rests upon is the passive conduct of the creditor in not suing. He must himself use diligence, and take such effectual means as will enable him to call on the creditor either to sue, or to give him, the surety, the means of suing." Lord ELDON in *Eyre v. Everett,* 2 Russ. 381.

So, as it is said, the duty of activity is imposed by law on the surety to protect himself rather than on the creditor to protect him.

The foregoing covers all the matters discussed in the briefs of counsel which are considered of sufficient importance to warrant special mention in this opinion, except the question of whether there was a valid extension of the note, in view of the conclusion we have reached in respect to that matter. It is conceded that, waiving other questions which have been decided adverse to appellant, he cannot recover unless his obligation of suretyship was discharged by a valid extension of the time for payment of the note by the agreement between O'Hearn and the Superior & Duluth Loan & Debenture Company.

As indicated in the statement, the transaction as to the extension consisted of a request by O'Hearn on behalf of himself and Jones, who were the principal debtors, made before the note was due, for an extension of the time of payment thereof, and the granting of such request. Some significance is claimed for the circumstance that the holder of the note, after such request and consent, entered the result upon the loan register as a renewal of the loan, but we are unable to perceive how the mere bookkeeping feature of the matter, with which O'Hearn was in no way concerned, cuts any figure whatever. Further significance is claimed for the fact that after the extension agreement, so called, was made, respondent paid an instalment of interest, which fell due three days after such extension. The payment of interest was not a condition of the extension, and if it were otherwise, such payment was only compliance with the obligation of the payor independently of any extension. It cannot be properly referred to as a consideration supporting a new contract. The law is well settled, as will be hereafter more fully seen, that neither payment of the principal of a debt, or any part thereof, nor payment of interest thereon according to contract, constitutes a consideration for an extension. *Stroud v. Thomas,* 139 Cal. 274, 72 Pac. 1008; *Woolford v. Dow,* 34 Ill. 424; *Davis v. Stout,* 126 Ind. 12, 25 N. E. 862; *Wilson v. Powers,* 130 Mass. 127; *Mathewson v. Strafford Bank,* 45 N. H. 104; *Wheeler v. Washburn,* 24 Vt. 293.

Reference is made to the fact that some days after the transaction, as regards the extension, was concluded between the parties, without the knowledge and in the absence of O'Hearn, and without any subsequent notice to him thereof, an indorsement was placed on the back of the note in these words: "This note, by mutual agreement, is extended for one year from April 15, 1893, at eight per cent. payable semi-annual, interest having been paid to April 15, 1893, and all coupons surrendered," and that subsequently interest was

paid by O'Hearn in accordance therewith, instead of ten per
cent., which was the contract rate in case of the debt not being
paid at maturity.    It is claimed that such indorsement and
payment evidences a binding contract.    We cannot view the
matter that way.    The rights of the parties, whatever they
were, became fixed when the request of April 11, 1893, for
the extension of the note for one year was granted on April
12th thereafter.    If, notwithstanding those circumstances,
the holder of the note could have enforced payment at any
time after the due date thereof according to contract as to
time, the mere unilateral memorandum on the back of the
same, made four days after the mutual transaction was com-
pleted, did not change the situation, neither did the receipt
of money paid as interest, and the indorsement thereof on the
back of the paper.    The consent of the holder of the note to
receive $200 October 15, 1893, as payment in full for interest
to that time when he could have demanded $250, did not con-
stitute a consideration for the extension.    The rebate was a
mere gratuity allowed pursuant to a mere moral obligation,
not affecting the relations between the parties in any respect
whatever.

The point is made that the transaction was in effect an ex-
change of promises, the one being the consideration for the
other,—a promise on the one hand to keep the money for an
additional year at the same rate of interest, as before indi-
cated, and a promise on the other to loan the money for such
additional year at such rate, *Nelson v. Flagg,* 18 Wash. 39,
50 Pac. 571, and *Benson v. Phipps,* 87 Tex. 578, 29 S. W.
1061, being referred to in support thereof.    There are many
such authorities.    A pretty full discussion of them is to be
found in *Reed v. Tierney,* 12 App. D. C. 165.    There are
still more authorities to the contrary, which, according to sub-
stantially the universal judgment of text-book writers, estab-
lish the better rule.

The reasoning in support of the first theory, as above indi-

cated, is that consent to an obligation for an extension involves an exchange of benefits, which satisfies to the fullest extent all of the essentials of a consideration. The reasoning in support of the other theory is that such a transaction does not add anything to the obligation of the debtor; that in the absence of it he would be bound to pay the debt and interest any way as a condition of retaining the money until such time as it should please the creditor to insist upon payment. It does not appear that this court has passed upon that precise question.

On a matter where there is such a direct and irreconcilable conflict as we find on the one under discussion there is very little to be gained by a lengthy review and analysis of authorities. There is not much that can well be done but to take a position on one side of the conflict or the other, being guided by what appears to be the weight of authority. It seems that such weight is significantly against the proposition contended for by appellant. The following distinctly hold that a request for an extension of the time of payment of a note at the contract rate of interest and consent thereto, is not binding because not supported by a new and independent consideration. *Hughes v. Southern W. Co.* 94 Ala. 613, 10 South. 133: "It requires an additional valuable consideration . . . to bind the promisee to an observance of even an express promise to indulge." *Woolford v. Dow,* 34 Ill. 428: It was mutually agreed to extend the time of payment of the note at ten per cent. interest. That involved no new consideration. "The note by its terms drew ten per cent. interest, and this agreement made no change in its terms as to the rate of interest. . . . The agreement to extend the time of payment . . . was a mere *nudum pactum.*" *Crossman v. Wohlleben,* 90 Ill. 537, 542: "A mere promise made by a creditor to indulge the debtor for a given length of time, upon the payment of interest, does not bind him to such extension, because the payment of interest is already secured by the terms of the original note

for any delay that may occur from any indulgence that might be given." *English v. Landon,* 181 Ill. 614, 619, 621, 54 N. E. 912: "At about the time of the maturity of the note in suit the principal maker notified the payee that he would like the same to run another year at the same rate of interest. The payee only desired interest on his note, and so notified the principal maker. . . . There is no evidence in this record showing such an extension of time for a specified period and for a specified consideration as was mutually binding on both parties." *Kerns v. Ryan,* 26 Ill. App. 177; *Edmonds v. Thomas,* 41 Ill. App. 505; *Heenan v. Howard,* 81 Ill. App. 629; *Dare v. Hall,* 70 Ind. 545. An agreement to continue payment of interest at the same rate as that specified in the note, or at a reduced rate, does not constitute a new consideration. *Hume v. Mazelin,* 84 Ind. 574; *Davis v. Stout,* 126 Ind. 12, 25 N. E. 862; *Wayman v. Jones, supra; Wilson v. Powers, supra; Roberts v. Stewart,* 31 Miss. 664; *Reynolds v. Ward,* 5 Wend. 501. A debtor's promise to pay interest on an existing contract and according to its terms during a period of delay in the enforcement thereof, is a promise to do precisely what he is bound to do without a promise. "If the debtor's promise to pay interest creates no additional obligation it is no consideration for a contract to delay." *Sully v. Childress,* 106 Tenn. 109, 60 S. W. 499; *Howell v. Sevier,* 1 Lea, 360; *Tatum v. Morgan,* 108 Ga. 336, 33 S. E. 940; *Harburg v. Kumpf,* 151 Mo. 16, 52 S. W. 19; *La Belle Sav. Bank v. Taylor,* 69 Mo. App. 99. All elementary writers, as before stated, so far as we can discover, are in harmony with these authorities. 1 Brandt, Suretyship (3d ed.) § 388; 2 Randolph, Com. Paper (2d ed.) § 768; 2 Daniel, Neg. Inst. (5th ed.) § 1317a.

We are not unmindful of the fact that there are instances where it has been said in legal opinions that the weight of authority is contrary to what we assert. *Reed v. Tierney, supra* (12 App. D. C. 165) is one of such instances. But to

our minds the writers must have reached a conclusion from a very imperfect examination of the matter.

While, as before indicated, there is no decision of this court precisely on the point, so none interfering with the judicial policy here being established in harmony with the view pressed upon our attention by the learned counsel for appellant, it is believed that the contrary one has been, generally, in business transactions accepted as correct in this state. No good reason is perceived why what seems to be the decided weight of authority in respect to the matter should not be followed. The decisions here, so far as they go, are in harmony therewith. They are to the effect that a valid agreement for the extension of the time of payment of a note must have all the essentials of a binding contract; that it must be reasonably definite as to time and there must be an agreed equivalent for the extension: such a consideration as will so tie the hands of the obligee as to disable him from enforcing the obligation until the expiration of the time agreed upon. *Riley v. Gregg,* 16 Wis. 666; *Ready v. Sommer,* 37 Wis. 265; *Meiswinkle v. Jung,* 30 Wis. 361; *Irvine v. Adams,* 48 Wis. 468, 4 N. W. 573; *Hamilton v. Prouty,* 50 Wis. 592, 7 N. W. 659; *Fay v. Tower,* 58 Wis. 286, 16 N. W. 558. That equivalent must be something other than what the law would award to the obligee in case of a mere extension of the time of performance, regardless of any pretense of a contract to do so. It must be something separate from, and entirely additional to, what would accrue in favor of the obligee if he merely allowed the note to run from day to day.

Testing the transaction respecting the alleged extension in question by the foregoing, it was not binding on the holder of the note. There was never a moment of time after it fell due in which such holder was not perfectly free to enforce payment, nor in which the appellant and his co-sureties, or either of them, or the parties primarily liable for the debt, or either of them, could not have discharged the debt by payment of it.

Neither was there a moment of time after respondent took up the note and mortgage for his protection, in which appellant could not have made contribution and put himself in a position to protect himself from loss, so far as practicable, by resorting to the mortgage security and the liability of his co-sureties as freely as respondent could. If there were any loss which accrued to him by delay in working out the ultimate rights of the parties, the fault was as much his as of any one else. So there is no ground for exempting him from liability to respondent on the ground of laches. We see no escape from the conclusion that the rights of respondent were fairly vindicated by the judgment appealed from.

*By the Court.*—The judgment is affirmed.

The following opinion was filed January 16, 1906:

DODGE, J. While I agree with the judgment of affirmance in this case, I do so on the ground that, in the dealings between the principal debtor and the mortgagee resulting in the so-called extension of time, I can find no agreement on the part of the debtor to refrain from payment during the term of such extension. To my mind the whole transaction is consistent with mere indulgence on the part of the creditor, and in no wise inconsistent with a continuation of the privilege, always resting in a debtor, to pay an overdue debt. The proposition declared in the court's opinion as a basis for the conclusion reached, that, even if such a promise on the part of the debtor were in fact made, it would not constitute such consideration for the promise of the creditor to extend as to give it validity, is, however, in my view, so opposed both to reason and authority that I cannot yield it my assent. I agree fully with the rule laid down, and the authorities cited in support of it, that a mere promise by a creditor to grant extension of time, however definite, is of no validity unless there be some new consideration therefor, either a benefit to the creditor or

a detriment to the debtor.   I also agree that the mere pay-
ment or promise of payment of any part of the money, prin-
cipal or interest, which the debtor is already bound to pay by
the terms of the existing note, is not such consideration.   But
when a debtor, having the right at his pleasure to pay a debt
and thus to terminate his liability for interest and to deprive
the creditor of an interest-bearing investment for his money,
agrees to forego such right for a definite period, I can see no
escape from the view that such agreement on his part is both
a benefit to the creditor and a detriment to himself such as,
according to legal definitions, constitutes a valid consideration
for the creditor's promise to forego his right to insist on pay-
ment during the same period.   We all know that, in ordinary
business affairs, investors of money are ready to make various
concessions in the way of lower rates of interest and the like
in consideration of receiving a permanent investment in lieu
of one which may be terminated at the option of the debtor.
Such distinction is considered valuable and worth paying for.
It also disables the debtor from paying up and thus saving in-
terest; a valuable right.   I am amazed to find in the opinion
filed a statement that the weight of authority is against this
proposition.   I find in its support numerous decisions, among
which are the following: *Crossman v. Wohlleben,* 90 Ill. 537;
*Dodgson v. Henderson,* 113 Ill. 360, 364; *English v. Landon,*
181 Ill. 614, 54 N. E. 911; *Bailey v. Adams,* 10 N. H. 162;
*Fowler v. Brooks,* 13 N. H. 240; *McComb v. Kittridge,* 14
Ohio, 348; *Wood v. Newkirk,* 15 Ohio St. 295; *Fawcett v.
Freshwater,* 31 Ohio St. 637; *Chute v. Pattee,* 37 Me. 102;
*Brown v. Prophit,* 53 Miss. 649; *Simpson v. Evans,* 44 Minn.
419, 46 N. W. 908; *Dillaway v. Peterson,* 11 S. D. 210, 76
N. W. 925; *Shuler v. Hummel* (Neb.) 95 N. W. 350; *Eaton
v. Whitmore* (Kan. App.) 45 Pac. 450, 451; *Green v. Lake,*
2 Mackey, 162; 2 Hare & Wall. Ld. Cas. (5th ed.) 469;
*Reed v. Tierney,* 12 App. D. C. 165; *Nelson v. Flagg,* 18
Wash. 39, 50 Pac. 571.   I find it assumed, as unquestion-

able, by our own court in *Templeton v. Butler,* 117 Wis. 455,. 94 N. W. 306, and when I turn to the authorities cited in the opinion as in conflict therewith, I find none of them to so conflict.    Of the text-writers said to oppose it, I find in 1 Brandt,. Suretyship (3d ed.) § 388, the declaration that the better opinion is that the surety is discharged in such case, and that the reasoning upon which the rule is founded is invincible; while I find that neither of the other text-writers cited refers to the subject at all, either in approbation or disapproval, in the treatises cited, but that Mr. Randolph declares it to be supported by the weight of authority in his article on Commercial Paper, 7 Cyc. 902.

Examining the cases cited in the opinion as conflicting with the rule that a definite promise to retain the money at interest during a specified term is sufficient consideration to support an agreement by the creditor to extend, for which I contend, I find them to go no further than to declare the proposition that a mere promise to pay interest at the rate fixed by the former contract so long as the creditor forbears collection, is no consideration, because it is the legal obligation already resting on the debtor, and his promise, therefore, adds nothing of detriment to him or benefit to his creditor; with which I fully agree.    True, some of these cases are based upon agreements which might be construed to include agreement of the debtor that he would retain the money, but in none of these is any such construction declared nor its effect to validate the extension at all discussed.    In Illinois, however, whence are taken most of the citations, the distinction is clearly drawn. Thus, in *Crossman v. Wohlleben,* 90 Ill. 537, in dealing with a promise to extend upon a promise to pay interest at the old rate, it is said:

"It is essential that both parties shall be bound by the contract. . . . In the case at bar there is no consideration shown either *by a promise on the part of the debtor to keep the money for any given time and pay interest for that time or*

by paying the interest in advance." (Italics mine.) *Heenan v. Howard,* 81 Ill. App. 629, 634, is entirely similar. But in *Dodgson v. Henderson,* 113 Ill. 360, 364, where the debtor did expressly agree to keep the money, the court held:

"The agreement to keep the money another year and pay the interest thereon was a sufficient consideration for the promise of the payee to extend the time of payment." Approved in *English v. Landon,* 181 Ill. 614, 54 N. E. 911.

In Mississippi, too, whence is cited *Roberts v. Stewart,* 31 Miss. 664, which fully adopted the rule of *Reynolds v. Ward,* 5 Wend. 501, and of the Indiana cases, the distinction for which I contend was at once recognized as nowise inconsistent in *Brown v. Prophit,* 53 Miss. 649. The Wisconsin cases go no further than to demand generally that an agreement for an extension, like any other contract, must have a consideration either of benefit to the creditor or disadvantage to the debtor. That a promise waiving the debtor's option to pay at will, when evidenced by a new promissory note, is such a consideration, is expressly held in *Omaha Nat. Bank v. Johnson,* 111 Wis. 372, 87 N. W. 237, and that a verbal promise to forego payment is also, was assumed, as already stated, in *Templeton v. Butler, supra.*

When a proposition is supported by unassailable reasons and by all the authority speaking expressly on the subject, I think it should not be repudiated but adhered to.