STRELOW and wife, Respondents, vs. BOHR and others, Appellants.

*February 14—March 12, 1940.*

For the appellants there was a brief by *Winter & Koehler* and *H. E. Koehler* of Shawano and *Lehner & Lehner* and *Adolph P. Lehner* of Oconto Falls, and oral argument by *Adolph P. Lehner* and *H. E. Koehler*.

The cause was submitted for the respondents on the brief of *Wallrich & Aschenbrener* of Shawano.

FRITZ, J.   For the consideration of the appeal of the defendants, Clement Bohr, Arthur Schoenike, and Ruth Ebenreiter, from the order denying their motion for summary judgment, and likewise a review, pursuant to plaintiffs' notice, of that part of the order which denied their motion for a summary judgment, it suffices to note the following facts and proceedings, which appear without dispute from the pleadings and affidavits filed herein.   This action is the second of two actions brought by the plaintiffs against the above-named defendants upon a contract made on May 23, 1938, between the plaintiffs and Clement Bohr for the sale to him by the plaintiffs of their farm and the livestock and other personal property used by them in operating the farm. The terms of the contract were incorporated in three instruments, to wit, (1) a quitclaim deed by which plaintiffs conveyed the farm to Bohr, with a provision therein that it was "subject to mortgage of $5,000 and accrued interest held by Mrs. W. J. Ruhbusch; and subject to a second mortgage of $425 held by Mrs. W. J. Ruhbusch with accrued interest; and subject to a chattel mortgage of $300, held by E. W. Schmidt, with accrued interest, all of which mortgages the grantee, Clement Bohr, assumes and agrees to pay;" (2) a bill of sale by which plaintiffs, in consideration of $1,000 then paid to them by Bohr, transferred to him the personal

property "subject to any and all outstanding mortgages and incumbrances" (but there was no provision therein that Bohr agreed to pay the debt secured by a chattel mortgage on the cattle); and (3) a written agreement which provided that whereas plaintiffs were "to look after and care for the personal property on said farm until the same may be removed or sold by" Bohr, plaintiffs' services were to be compensated by their receiving the proceeds of the milk of the cows "during such time while they have the care and custody thereof;" that plaintiffs "reserve the right to cut the standing and growing timber on" eighty acres "but that all such timber must be cut, felled, and removed within one year from the date of this instrument," and that they "shall have the right to go on said land for the purpose of removing the same within such year;" and that they "also reserve the right to retain possession of the premises for a period of one month without the payment of any rent; . . . and the right to remove and harvest all the crops seeded, planted or growing on said land, such crops however to be all removed on or before January 1, 1939."

Within four days after the execution and delivery of the instruments, plaintiffs brought their first action against Clement Bohr, Ruth Ebenreiter, and the Gillett Sales Company, for which, plaintiffs alleged, Ruth Ebenreiter was an agent. In their complaint in that action plaintiffs alleged that through an error in drafting the bill of sale, there was omitted a clause that "the grantee assumes and agrees to pay" the chattel-mortgage debt; that in the recorded copy of the bill of sale Bohr's name was erased and the name of Ruth Ebenreiter substituted as the vendee; that she is a part owner of the Gillett Sales Company and Bohr acted as her agent in the transaction with plaintiffs; that immediately following the recording of the altered bill of sale, the Gillett Sales Company and A. L. Schoenike, as an auctioneer, advertised the personal property for sale at an auction to be

held on May 28, 1938, and if it was sold, Ebenreiter could possess herself of the profits of the sale without extinguishing the liability for the chattel-mortgage debt for which plaintiffs are personally liable; and that the value of the personal property was in excess of the $1,000 paid as the additional consideration for the transaction, and to permit an auction sale without having made satisfactory arrangements with the mortgagees would work irreparable damages to plaintiffs. In that complaint plaintiffs prayed for relief that Bohr be ordered, "as a condition precedent to dispossessing himself of any of said property conveyed to him by plaintiffs, to obtain" (a) a satisfactory release from the chattel mortgagee relieving plaintiffs from any personal liability thereunder; (b) a release from the holder of the mortgages on the farm of any personal liability of plaintiffs thereunder; and (c) an authorization by that mortgagee permitting plaintiffs to cut and remove the timber from the farm during the ensuing twelve months; and that the bill of sale be ordered corrected by inserting a provision that Bohr assumes and agrees to pay the incumbrances on the personal property, and that plaintiffs have such other and further relief as may be just and equitable. The first action was tried in February, 1939, and the court filed its decision in writing upon which formal findings and a judgment were filed March 1, 1939. The judgment provided that the bill of sale be corrected by inserting a provision that Bohr assumed and agreed to pay the chattel-mortgage debt, and by inserting his name, in lieu of the name of Ruth Ebenreiter as vendee, in the recorded copy. In addition the judgment denied plaintiffs' prayer for relief that Bohr be ordered as a condition precedent to dispossessing himself of any of the property, which plaintiffs conveyed to him, to obtain (a) releases of plaintiffs' liability under the chattel and real-estate mortgages, and (b) an authorization permitting plaintiffs to cut and remove the timber from land conveyed by them to Bohr; and the judgment dissolved an injunction *pendente lite.*

On March 20, 1939, plaintiffs commenced the action at bar and again alleged in their complaint the making of the same contract and the execution and delivery of the same instruments between the plaintiffs and Bohr in relation to the sale of the farm and the personal property to Bohr and his payment of $1,000 to them. In addition they alleged that he agreed, as part of the consideration for the sale of the property, to permit them to cut and remove the timber within twelve months, and harvest and remove all growing crops by January 1, 1939; that he assumed the incumbrances for $5,000 and $425 on the real estate and $325 on the personal property and agreed to pay the incumbrances in order that plaintiffs may cut and remove the timber without hindrance from the owner of the real-estate mortgages; that plaintiffs are still in possession of the property and have tendered possession to Bohr "providing he carry out the terms of the written agreement;" but that he has failed to pay the mortgages so that plaintiffs may cut and remove the timber, and on February 17, 1939, the holder of the mortgages commenced foreclosure and obtained an order enjoining the removal of timber; that on May 27, 1938, the holder of the chattel mortgage commenced foreclosure and the sheriff took possession of the personalty and left it in charge of plaintiffs; and that defendants are associated together in business enterprises, and Bohr gave a chattel mortgage to the personalty to Schoenike, and a bill of sale to Ebenreiter on March 3, 1939, and gave a quitclaim deed of the farm on March 2, 1939, to the defendant Jule Vandree to harass plaintiffs. By their prayer in plaintiffs' second complaint they seek judgment requiring Bohr to specifically perform his contract with plaintiffs by paying the mortgages, within such time as the court may determine to be reasonable; extending for a reasonable period the time within which plaintiffs may cut and remove the timber, if defendants specifically perform; and forfeiting to plaintiffs the $1,000 down payment by Bohr and canceling the transactions between

them, or, in the alternative, impounding that sum of money and permitting plaintiffs to prove their damages to be paid out of that sum if plaintiffs fail in specific performance. In their answers the defendants Bohr, Schoenike, and Ebenreiter admitted some of plaintiffs' allegations and denied others, and, in addition, alleged the commencement of the first action, and the trial and judgment therein; and that that judgment is *res adjudicata* as to the facts and the issues raised by plaintiffs in the second action. Upon their answers and affidavits made by their attorneys, the defendants moved for summary judgment dismissing the complaint; and thereupon plaintiffs filed affidavits in opposition to defendants' motion, and likewise moved for summary judgment in their favor. The court, in its decision denying both motions for summary judgment, concluded that the former judgment was no bar to the second action; that Bohr by assuming to pay the mortgages in effect agreed to secure to plaintiffs the right to remove the timber, and this agreement was part of the consideration for the sale of the property, and Bohr's failure to pay resulted in a failure of consideration; and that, because of that failure, plaintiffs are entitled to a vendor's lien upon the personal property which they can foreclose herein to recover their damages for the loss of the right to remove the timber.

These conclusions and the order denying defendants' motion for a summary judgment cannot be sustained. All the relief to which plaintiffs were entitled under the facts shown by the record was granted in the first action by reforming the bill of sale so as to include the provision that Bohr assumed and agreed to pay the chattel-mortgage indebtedness, and by inserting his name in place of Ruth Ebenreiter's name as the vendee in the recorded copy of the bill of sale. All negotiations, which preceded and resulted in the contract which was made between the parties, must be considered merged in the written agreement, the bill of sale, and the quit-

claim deed, which were executed and delivered on May 23, 1938 (*Derbeck v. Albright,* 186 Wis. 515, 519, 203 N. W. 337) ; and these instruments, as reformed by the judgment in the first action, must be construed together. *Bank of Sheboygan v. Fessler,* 218 Wis. 244, 260 N. W. 441; *Building Cont. L. M. L. Ins. Co. v. Southern S. Co.* 185 Wis. 83, 200 N. W. 770; *Urwan v. Northwestern Nat. Life Ins. Co.* 125 Wis. 349, 103 N. W. 1102. It is not claimed that there was any subsequent agreement modifying or superseding the contract made between the parties on May 23, 1938. Consequently, the rights and obligations thereunder of the plaintiffs and of Bohr, respectively, are only such as exist under the terms and provisions embodied in the written agreement, the quitclaim deed, and the bill of sale, as reformed by the former judgment. Under the terms and provisions therein plaintiffs sold and transferred to Bohr the personal property and the farm with the exception that they did not sell to him and he did not acquire title to or become the owner of the crops and the timber, which plaintiffs expressly reserved to themselves with the right to remove the crops by January 1, 1939, and cut and remove the timber within one year from May 23, 1938; and that they also reserved the right to retain possession of the farm for one month without paying rent, and to receive the proceeds of the milk for their services in taking care of the personal property. On the other hand, the personal property was sold and conveyed to Bohr by the bill of sale executed by plaintiffs without making any reservation whatever in their favor in respect to Bohr's title or ownership, or his disposition thereof. And if the value of that personal property was $2,000, as plaintiffs allege in their second complaint, then its value was so greatly in excess of the debt of $325 secured by the chattel mortgage thereon that it was clearly improbable that the plaintiffs would ever be compelled to pay that indebtedness. But in any event, Bohr's proposed sale of the personal property at auction would not

have violated any right of the plaintiffs and did not give rise to any cause of action in their favor. The sale of the property by Bohr would not have been a conversion thereof and the mortgage lien would have continued in favor of the mortgagees and with the right on their part to enforce their lien by foreclosure. *Midland Nat. Bank & Trust Co. v. Peterson,* 229 Wis. 19, 281 N. W. 683. To that extent the proposed sale may have been of some concern or materiality to the mortgagees, but it did not concern the plaintiffs. The only provision for a payment to be made to the plaintiffs was Bohr's obligation to pay the sum of $1,000, which he paid to them when the written agreement, quitclaim deed and bill of sale were delivered to him. He did also agree to pay to the mortgagees the indebtedness secured by the mortgages. In none of the written instruments was there any provision obligating Bohr to pay to the plaintiffs the amount of the indebtedness, which he agreed to pay to the mortgagees, or by virtue of which the plaintiffs can be held to have become entitled to enforce payment thereof by Bohr until and unless the plaintiffs first paid the amount thereof to the mortgagees in the event of default by Bohr in paying the indebtedness to the mortgagees when due. Under Bohr's agreement to pay the mortgage indebtedness, he became the principal debtor, and as between him and the plaintiffs the latter were but sureties (*Fanning v. Murphy,* 126 Wis. 538, 544, 105 N. W. 1056; *Stites v. Thompson,* 98 Wis. 329, 73 N. W. 774), and it was not even permissible for the plaintiffs, as such sureties, to voluntarily pay the indebtedness and then hold their co-sureties liable. *Fanning v. Murphy, supra.* The right to enforce payment of the mortgage debt continued to belong to mortgage creditors and not to the sureties; and equity cannot by specific performance require payment thereof; but such parties as are or may become entitled to enforce payment thereof, are relegated to an action at law or the enforcement of payment by foreclosure, or otherwise, out of

the security. Consequently, the adjudicated conclusions in the first action that under the contract between the parties there was no obligation requiring Bohr, as a condition precedent to dispossessing himself of any of the property purchased by him from the plaintiffs, to obtain either releases of their personal liability upon the mortgages or to obtain an authorization to permit plaintiffs to remove timber, and that therefore they were not entitled to specific performance, or any other relief in that respect, still stand and control, not solely because they became *res adjudicata* by reason of the judgment in that action (*Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599; *Lewko v. Chas. A. Krause Milling Co.* 219 Wis. 6, 261 N. W. 672; *Kuchenreuther v. Chicago, M., St. P. & P. R. Co.* 225 Wis. 613, 275 N. W. 457; *Hannon v. Hannon,* 230 Wis. 620, 284 N. W. 499; *Bassett v. Bassett,* 99 Wis. 344, 74 N. W. 780), but also because no obligation requiring Bohr to obtain such releases or authorization has been assumed or incurred by him, or been created otherwise since the commencement of the first action. Inasmuch as there has never been an obligation on the part of Bohr to obtain such releases or authorization, and there has never accrued any right in favor of the plaintiffs to enforce the payment of the mortgage indebtedness by Bohr, and they cannot have any such right unless and until after they in fact pay or acquire that indebtedness, there has been no failure of consideration, and there does not exist any right in favor of the plaintiffs for which they can be deemed to have, as the trial court concluded herein, a vendors' lien on the personal property. Consequently, there has not accrued any right of action in the plaintiffs to foreclose such a lien, and the court erred in holding that this action should continue for that purpose and the assessment of plaintiffs' damages for the loss of their right to remove the timber. It follows that, upon the facts which appear conclusively from the pleadings and affidavits, including the record in the first action, the plaintiffs'

action has no merit and cannot be maintained, and that therefore the defendants were entitled to have the court grant their motion for summary judgment dismissing the action.

On the other hand, the trial court rightly overruled the plaintiffs' objection that defendants' basis for granting their motion for summary judgment was insufficient because of the absence of an affidavit by a defendant stating that "he believes that . . . the action has no merit," as is required under sec. 270.635 (2), Stats., relating to summary judgments. It is true that technically there was a defect in the first instance in that there was no affidavit to that effect by a defendant, although there were statements to that effect in affidavits which were made on behalf of the defendants by their attorneys, and were filed on behalf of the defendants with their motion for summary judgment. However, before the hearing on defendants' motion, Bohr's affidavit was filed in which he denied that "the defendants have no defense to this action," and stated that his affidavit was made for "the purpose of further substantiating the motion of the defendants for summary judgment dismissing this action *for the reason that this action has no merit* and cannot be maintained." Moreover, the fact that the action has no merit appears conclusively from the undisputed facts, including the documents and records in this and the former action, which were submitted by the parties as basis for their motions. Under these circumstances, plaintiffs' objection to the sufficiency of defendants' affidavits by reason of the technical defect in question was overcome by undisputed facts which appear in the record.

*By the Court.*—The order denying defendants' motion for summary judgment is reversed with directions to enter a summary judgment dismissing the complaint. The order denying plaintiffs' motion for summary judgment is affirmed.