LICHTSTERN and another, Executors, Respondents, vs. FOREHAND and others, imp., Appellants.

*May 2—June 18, 1923.*

*Mortgages: Priority: Intention of parties: Sale of mortgaged property: Assumption of debt by purchaser: Relation of parties: Foreclosure: Proceeds of insurance policies: Application: Adjustment of loss.*

1. A business property was sold for $22,500, the purchase price consisting of a mortgage for $12,000 on the property securing the payment of notes maturing in thirteen, fourteen, and fifteen years respectively, and of a mortgage for $10,500 on the property sold and also constituting a second lien on other lands, which secured notes in varying amounts maturing one each year for twelve years. The preliminary contract of sale referred to a first mortgage of $12,000 and a second mortgage of $10,500, and the $12,000 mortgage was recorded ten minutes before the other, but nothing was stated in either instrument as to priority. *Held,* that it was the intention of the parties to constitute the $12,000 mortgage a first lien and the $10,500 mortgage a second lien on the property.

2. When lands subject to a mortgage are conveyed by the owner and mortgagor to a third person who assumes the payment of the mortgage debt, the relationship of principal and surety is created, the grantee becoming the principal obligor and the grantor the surety.

3. If property, mortgaged and subsequently sold to a purchaser who assumes the indebtedness, is destroyed by fire, the mortgagee, who knew of the assumption of the mortgage, cannot apply the proceeds of insurance policies on the mortgaged premises toward the payment of a second mortgage, covering the destroyed property and other lands, to the detriment of the original mortgagor without his consent.

4. The insurance policies in this case represented additional collateral to the mortgage indebtedness, designed, in the event of fire, to stand in the place of the buildings burned; and without the consent of the mortgagor and the mortgagee they cannot be applied by the mortgagee to the satisfaction of the indebtedness before it became due.

5. The proceeds of the insurance policies should have been first applied towards the payment of the first mortgage on the property destroyed.

6. The fact that the mortgagee neglected for a period of more than a year to begin foreclosure proceedings, after being requested by the mortgagor to do so, would not operate to relieve the mortgagor from liability to the extent of any injury he may have suffered by reason of such failure.

7. Where the parties failed to obtain consent to the change of ownership from the insurance companies before the property was destroyed by fire, the mortgagee and the purchaser from the mortgagor were warranted in making a settlement with the insurance companies for less than the face of the policy, and were not required to account to the mortgagor for the face value.

APPEAL from a·judgment of the circuit court for Grant county: S. E. SMALLEY, Judge. *Reversed, with directions.*

The appeal is by the defendants *William C.* and *Elizabeth M. Forehand* from a judgment of foreclosure in favor of the plaintiffs, under which a deficiency judgment was authorized against appellants.

On the 25th day of May, 1915, one Sickle, of Chicago, was the owner of a certain lot with a building thereon, known as the Sickle Building, in the city of Platteville,

Grant county, Wisconsin, and the defendants *William C.* and *Elizabeth M. Forehand,* husband and wife, being desirous of purchasing said premises, entered into an agreement at Chicago with said Sickle for the purchase thereof for the sum of $22,500, pursuant to which the *Forehands* agreed to execute certain notes and mortgages to secure the payment of the purchase price, as follows, to wit: one purchase-money mortgage, stipulated to be a first lien on said premises, to secure the following notes: one note for $1,500 due on or before thirteen years after date; one for $1,500 due on or before fourteen years after date; and one for $9,000 due on or before fifteen years after date, making the total of the principal of the notes to be secured by the first mortgage the sum of $12,000; also a purchase-money mortgage on said premises, which it was agreed should be a second lien thereon, to secure the payment of notes as follows: five notes for $500 each, due respectively on or before one, two, three, four, and five years after date; five notes for $1,000 each, due respectively on or before six, seven, eight, nine, and ten years after date; and two notes for $1,500 each, due respectively on or before eleven and twelve years after date, making the total of the principal of the notes to be secured by said second mortgage the sum of $10,500; all of said notes to bear interest at the rate of six per cent. per annum, payable semi-annually, and to have attached thereto interest coupons.

It was further agreed that the purchaser should at all times insure the building for the sum of $12,500, the insurance policies to be payable to the seller or mortgagee as his interest might appear. The agreement also provided that the purchaser, as additional collateral, should execute second mortgages upon lands other than that above mentioned, which mortgages and the lands, exclusive of the first mortgages thereon, if any, should be of the net cash value of not less than $10,500; and it was further agreed that Sickle would release such additional collateral at any time when a

*bona fide* sale of such lands should be effected, upon payment of one half of the net cash value of the collateral released and the substitution of additional second-mortgage collateral to cover the remaining one-half of the net cash value of the collateral released; all of such collateral to be to the entire satisfaction of said Sickle.

On the 1st day of June, 1915, the parties again met in Chicago, and Sickle then executed to the *Forehands* a warranty deed of said premises in Platteville, and the latter executed to the former two mortgages, respectively, for $12,000 and $10,500, to secure notes as provided for in said contract, the $12,000 mortgage being executed upon the premises situated in Platteville and the $10,500 mortgage on such premises and on several hundred acres of land in Grant county, Wisconsin, belonging to said *Forehands,* and which lands were incumbered by prior mortgages. The $12,000 mortgage was recorded in the office of the register of deeds of Grant county at 8 o'clock a. m. of July 19, 1915, and the $10,500 mortgage on the same date, but at 8:10 o'clock a. m. Nothing contained in the two mortgages indicated a priority, and both mortgages, except as above indicated, apparently were executed in accordance with the provisions of the contract above referred to, excepting further, that, instead of providing for $12,500 insurance, each of the mortgages contained a clause which called for insurance for the full insurable value of the building upon the Platteville real estate and of the fixtures contained therein; and in place of coupon notes the ordinary form of notes was used. Upon the execution and delivery of the deed and the notes and mortgages referred to the *Forehands* went into possession of the premises conveyed to them, and from time to time sold and conveyed portions of the farm lands situated in Grant county, Wisconsin, and from the proceeds of such sales made payments to the mortgagee, which were applied upon the notes secured by the $10,500 mortgage, so that the principal amount of such notes was reduced to the sum

of $7,000 and the acreage of the lands unsold to 170 acres.

On September 30, 1918, the *Forehands,* by proper deeds of conveyance, sold and transferred all of the property still covered by said mortgages to the Platteville Realty Company, and the latter, as a part of the consideration of such transfer, covenanted and agreed to assume and pay such mortgages, and at the same time the fire insurance policies herein referred to were furnished by the *Forehands* to the mortgagee and delivered to the agents of the insurance companies to indorse their consent to the transfer, but such consent had not been given at the time of the happening of the fire hereafter related. Upon such sale being consummated the *Forehands* left Platteville and removed to Alabama.

On the 8th day of February, 1919, the Sickle Building was completely destroyed by fire, and such building at that time was insured under two policies of insurance procured by the *Forehands,* pursuant to the provisions of the mortgages, aggregating the sum of $12,000, one policy being placed with the Franklin Fire Insurance Company for the sum of $4,000 and the other with the American Eagle Fire Insurance Company for the sum of $8,000. Both insurance companies at first refused payment of these policies. The $4,000 policy was, however, paid in full without suit, and, suit having been begun by both the mortgagee and the Realty Company for the collection of the $8,000 policy, such suit was adjusted by the payment of the sum of $6,750. In the collection of this insurance it is claimed by the attorneys herein for the plaintiffs that they represented the Platteville Realty Company and that the mortgagee was represented by his own attorneys. The proceeds of this insurance, after deducting the sum of $50, attorneys' fees claimed by counsel for the collection of the $4,000 policy of insurance, and the sum of $686.10, representing attorneys' fees and disbursements in the litigation for the collection of the $8,000 policy, were by said attorneys delivered to Sickle, the mortgagee, and applied by him, without the knowledge or consent of

the *Forehands,* as follows: first, to the payment in full of the principal and interest of the balance secured by the $10,500 mortgage, and the remainder to the notes first becoming due secured by the $12,000 mortgage, leaving a portion of one of said $1,500 notes unpaid; and the notes so paid were thereupon canceled by Sickle and mailed to and received by Kopp & Brunckhorst, attorneys, and by them filed away and retained up to the time of the pendency of the present litigation.

The Realty Company after the fire became insolvent, and all of its interest in the real estate covered by the mortgages was on October 7, 1919, sold by the sheriff of Grant county on execution sale to the defendant R. M. Orchard for the sum of $1,810. On January 29, 1920, Sickle died testate, a resident of the city of Chicago, and the plaintiffs and the defendant First Trust & Savings Bank were thereupon appointed and qualified as executors of his estate.

In July, 1920, the bank notified the *Forehands* of the indebtedness due it as one of the executors, and in reply to such notice the *Forehands* requested additional information with respect to such indebtedness; and on July 31st the *Forehands* were informed in a letter from the bank that such indebtedness was represented by two notes, one for $796.70, due July 21, 1929, being the alleged balance due upon one of the notes secured by the $12,000 mortgage, and the other for $9,000, secured by the same mortgage, due July 1, 1930. To this last letter the *Forehands* replied that there was sufficient security for the balance due the Sickle estate, and requested that foreclosure proceedings be instituted so as to avoid the accruing of unpaid taxes and of interest. After the lapse of more than one year from the date of the last request of the *Forehands,* the plaintiffs and the defendant bank, pursuant to the provisions of the $12,000 mortgage for default in the payment of interest and taxes, declared the whole amount due and demanded the immediate payment thereof, and the plaintiffs commenced the present action of foreclosure.

Upon the service of the summons and complaint herein upon the *Forehands,* the latter, in a letter addressed to plaintiffs' attorneys, requested that the plaintiffs' complaint be amended and that both mortgages be foreclosed, and that an application be made to the court to the effect that the insurance moneys be applied first to the payment of the principal and interest on the $12,000 notes and mortgage. In the answer interposed by the *Forehands* they prayed, among other things, for the judgment of the court directing that all insurance moneys received by Sickle or his legal representatives be applied to the reduction of the indebtedness secured by the mortgage sought to be foreclosed in this action.

The trial court in its opinion, after substantially relating the facts above set forth, in part made the following findings:

"The insurance money was applied by said Sickle in payment of the notes first to become due, and it retired all of the notes secured by the $10,500 mortgage, and as a result that mortgage is fully satisfied.

"Had there been but one mortgage given to secure all of these purchase-money notes, there could be no question but that the insurance money was properly applied. No reason is apparent for the giving of two mortgages; but the fact is that by agreement of the parties two mortgages were given, and the fact that the notes first falling due were secured by the $10,500 mortgage would indicate that it was the intention of the parties to retire that mortgage first. It would have been to the interest of Sickle as well as the defendants *Forehand* to have applied all of the insurance money toward payment of the note secured by the $12,000 mortgage, for then he would have had as security for the balance the said lot and certain other real estate included in the $10,500 mortgage; but the fact is that he applied the insurance money as heretofore stated, and of his own volition so far as the testimony shows, and, admittedly, without any demand or request from the defendants *Forehand* for a different application; and upon the record in this case, and after a most careful consideration of the matter and the briefs of counsel,

I am forced to the conclusion that the court has no authority to make a different application of the insurance money at this time.

"Therefore I find, as conclusions of law: That the $10,500 mortgage is fully paid and satisfied, and the judgment in this case should so declare, and provide for its release of record.

"That the plaintiffs are entitled to judgment foreclosing the mortgage sued upon in this action for the balance due and owing on the two notes described in the complaint, which I find to be for principal and interest to May 9, 1922, the sum of $11,354.28, with costs and solicitor's fees as found by the court at the close of the testimony; and that in the event that the mortgaged premises do not sell for a sufficient sum to pay the same, including any unpaid taxes thereon, the plaintiffs be given a judgment for the deficiency against the defendants *William C. Forehand* and *Elizabeth M. Forehand.*"

Additional facts will be found in the opinion.

For the appellants there were briefs by *Buell & Lucas* of Madison, attorneys, and *H. V. Forehand* of Kokomo, Indiana, of counsel, and oral argument by *Frank W. Lucas.*

For the respondents there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *L. A. Brunckhorst.*

DOERFLER, J.    In the contention of defendants' counsel and in their principal assignment of error herein it is claimed that the insurance moneys were improperly and illegally applied upon the amount claimed to be due on the notes secured by the $10,500 mortgage; that the $12,000 mortgage constituted a first-mortgage lien upon the Platteville real estate; that the $10,500 mortgage constituted a second-mortgage lien; and that by the application of the proceeds of the insurance policies to the $10,500 mortgage, valuable property covered by said last named mortgage was released, to the great detriment both of Sickle and his estate and of the *Forehands.*

In its opinion the trial court found that the contract in

question and the execution of the two mortgages constituted in law one transaction, and that while in fact two mortgages were actually executed, in reality they constituted one mortgage, and that the insurance moneys were properly applied first to the payment of the notes secured by the $10,500 mortgage, because the notes secured by such mortgage matured first. No provision being contained in either of the mortgages indicative of a priority, we must look to the contract and to the surrounding facts and circumstances in order to ascertain the intention of the parties upon the subject. The contract in express terms denominates the $12,000 mortgage as a first lien and the $10,500 mortgage as a second lien. The transfer of the property and the execution of the two mortgages unquestionably resulted from the written contract, and inasmuch as this contract in substance was carried out, the provisions, in so far as they do not conflict with or modify or change the ultimate agreement of the parties, are persuasive of the intention of the parties upon the subject. The court found, and in our opinion correctly, that the execution of the contract and the transfer and execution of the mortgages were a part of one transaction, and thus permitted the introduction of the contract in evidence. While the two mortgages were executed contemporaneously, the $12,000 mortgage was first recorded by the mortgagee in point of time, and while ordinarily a difference in time of ten minutes in the recording of documents of this nature is not conclusive on the subject of priority, nevertheless it is proper evidence of the intention of the parties on that subject. Unfortunately, at the time of the trial both Mr. Rafter, the president of the Platteville Realty Company, and the mortgagee, Sickle, had died, so that their evidence was not only unavailable, but witnesses who might otherwise have been competent to testify upon the subject, under the provisions of the statutes became incompetent witnesses. The fact that the notes secured by the $10,500 mortgage matured first, under ordinary circum-

stances might indicate that it was the intention of the parties that the mortgage securing such notes was intended as a first mortgage, but such inference can have but little weight in the absence of any evidence tending to show a different intention than that expressed in the contract itself.    It is true, as found by the court, that the entire purchase money might have been secured by one mortgage, and that every object sought to be attained might have been substantially accomplished in that manner.   The court, however, cannot enter the realm of speculation upon a subject where the intentions of the parties are so clearly expressed.    Both advantages and disadvantages might have resulted to the mortgagee in the execution of one mortgage covering the entire transaction.    It is very probable that the mortgagee considered that a first mortgage upon the Platteville real estate would be more readily negotiated than one mortgage upon the entire premises.    It is also very likely that the parties had in mind a sale of a part or of the whole of the farm lands situated in Grant county and the application of the proceeds upon the payment of the so-called second mortgage.    That this was in contemplation of the parties is made quite clear from subsequent developments, for the *Forehands* during the time of their ownership actually made sales from time to time and applied the proceeds upon the so-called second mortgage, so that when the property was transferred to the Platteville Realty Company the principal of the notes secured by the so-called second mortgage had been reduced to the sum of $7,000.    Such application of the proceeds derived from the sale of lands is persuasive to show that it was the intention of the parties not that the two mortgages should be considered as one, but, on the contrary, as separate obligations.    We therefore conclude that when the two mortgages were executed it was the intention of the parties to constitute the $12,000 mortgage a first lien or incumbrance on the Platteville real estate and the $10,500 mortgage a second mortgage or lien thereon.

When the property was transferred by the *Forehands* to the Realty Company and the latter assumed the payment of the notes and mortgages, the relationship of principal and surety was created, the Realty Company becoming the principal obligor and the *Forehands* the sureties. *Lumbermen's Nat. Bank v. Corrigan,* 167 Wis. 82, 85, 166 N. W. 650.

Was the mortgagee aware of the condition in the deed from the *Forehands* to the Realty Company under which the latter assumed and agreed to pay the mortgages upon the property? It appears from the evidence that after the transfer to the Realty Company the company paid the interest upon the mortgage maturing in January, 1919. It further appears that after the fire the mortgagee did not communicate with the *Forehands,* either with respect to the collection of the insurance policies or the application of the proceeds thereof. The mortgagee treated solely with the Realty Company and its attorneys. The proceedings to collect on the fire insurance policies were instituted by the mortgagee and the Realty Company jointly. When the proceeds of the policies were collected they were sent to the mortgagee, who arbitrarily applied them first towards the payment of the so-called second mortgage, and upon receipt of the money derived from the policies he sent the canceled notes secured by such mortgage to Kopp & Brunckhorst, the attorneys representing the Realty Company, without, however, executing or delivering a release of such mortgage, and such canceled notes, from the time of their delivery until the pendency of the present litigation, were retained by the attorneys, Kopp & Brunckhorst. In fact, during the lifetime of the mortgagee, after the transfer of the property, he entirely ignored the *Forehands* and dealt solely with the Realty Company and its attorneys. The *Forehands* were vitally interested in a proper application of the proceeds of this insurance, but the mortgagee saw fit not to deal with them but with the company. From these facts the inference is irresistible that the mortgagee was fully aware of the pro-

vision in the deed from the *Forehands* to the Realty Company pursuant to which the latter assumed and agreed to pay the mortgage indebtedness, and having this knowledge, by virtue of the creation of the relationship of principal and surety between the Realty Company and the *Forehands* the mortgagee was in duty bound to recognize the rights of the *Forehands* as sureties and to be guilty of no acts which would prejudice them. The doctrine is well stated in 3 Pomeroy, Eq. Jur. (4th ed.) § 1206, as follows:

"As between the mortgagor and the grantee, the grantee becomes the principal debtor primarily liable for the debt, and the mortgagor becomes a surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship and to respect the rights of the surety in all of his subsequent dealings with them. Payment, therefore, by a grantee who has assumed the entire mortgage debt, completely extinguishes the mortgage; he cannot be subrogated to the rights of the mortgagee and keep the mortgage alive for any purpose. While the mortgagee may release the mortgagor without discharging the grantee, his release of the grantee, or his valid extension of the time of payment to the grantee without the mortgagor's consent, would operate to discharge the mortgagor. In short, the doctrines concerning suretyship must control the dealings between these three parties."

In *Pauly Jail B. & M. Co. v. Collins,* 138 Wis. 494, 120 N. W. 225, this court has expressly approved of the same doctrine in the following language: "A mere right or privilege as against the principal becomes a duty to the surety when failure to exercise it may prejudice him."

Under the doctrines thus announced by the foregoing authorities, how can it be contended that the mortgagee in the instant case had an arbitrary right to apply the proceeds of the insurance policies as he did, which, if upheld, would

result in great damage and detriment to the original mortgagors, who with the knowledge of the mortgagee had become the sureties, while the grantee, the Realty Company, had become the principal debtor.

Under all the authorities that we have been able to find, the insurance policies represented additional collateral to the mortgage indebtedness. The proceeds of the insurance policies in the instant case were designed, in the event of fire, to stand in the place of the buildings destroyed by fire. Under ordinary circumstances, without the consent of the mortgagor and the mortgagee they cannot be applied by the mortgagee to the satisfaction of the mortgage indebtedness before such indebtedness becomes due, but are held by him in trust under the provisions of the policies as additional security, and to be used by him upon the maturity of the indebtedness in paying or reducing the mortgage indebtedness. It is said in 1 Jones on Mortgages (7th ed.) § 410:

"The insurance money received by the mortgagee takes the place of the mortgaged property, and the mortgagee would receive it, if the debt was due and unpaid, as he would receive the mortgaged property which it represented, to reasonably account for its use; but if no part of the debt was due he would hold it in the same manner, unless he or the mortgagor saw fit to use it to restore the property burned."

See, also, *Gordon v. Ware Sav. Bank,* 115 Mass. 588; *Powers v. New England F. Ins. Co.* 69 Vt. 494, 38 Atl. 148; *Fergus v. Wilmarth,* 117 Ill. 542, 546, 7 N. E. 508.

Under the above authorities we therefore hold that the insurance upon the Sickle Building constituted additional collateral security to the payment of the mortgage indebtedness, and inasmuch as we have held that the $12,000 mortgage was a first mortgage upon the Platteville real estate, the proceeds of such insurance, in equity and in law, should have been first applied towards the payment of the first mortgage on such property.

The present action was brought solely to foreclose the

first mortgage. The judgment as entered authorizes a deficiency judgment against the *Forehands* and confirms the application of the proceeds of the insurance policies as made by the mortgagee, and directs the satisfaction of the so-called second mortgage. The question, therefore, confronting the court involves the relief, if any, in view of what has heretofore been held, which should be afforded the appellants in this action. In the case of *Illinois T. & S. Bank v. Alexander Stewart L. Co.* 119 Wis. 54, 94 N. W. 777, it was held that:

"A vendee of a chattel mortgagor upon being called upon to pay off the mortgage indebtedness is entitled to have applied thereon all sums of money paid upon the same out of the proceeds of property covered by the mortgage that has been converted into money, whether included in the sale to such vendee or not."

It was also there held that where such vendee, out of the proceeds from the sale of such mortgaged property, pays a portion of the mortgage indebtedness, he is entitled to have the same applied upon such indebtedness, notwithstanding an agreement entered into between the mortgagor and the mortgagee authorizing the mortgagee to apply the payment in satisfaction of an unsecured claim.

If the grantee, the Realty Company, with the consent of the mortgagee, had sold the Sickle Building, the proceeds derived from such sale would stand in the same position as to the rights of the parties as though such proceeds had resulted from the foreclosure sale. Upon a foreclosure sale of the property upon which the Sickle Building was located, the proceeds thereof could only be applied first to the payment or reduction of the indebtedness secured by the first mortgage.

Counsel for the *Forehands* contend that inasmuch as the plaintiffs neglected for a period of upwards of a year to begin foreclosure proceedings after being so requested, the *Forehands* are released from their liability as mortgagors

to the extent of any injury they may have suffered by reason of such failure. This view does not find support under the decisions of this court. In *Harris v. Newell,* 42 Wis. 687, it is said:

"A surety is not released at law by a failure of the creditor to proceed upon being notified by him to do so; but in some cases equity will interfere, at his suit, to compel the principal to pay the debt, or to compel the creditor to proceed against the principal." (Syllabus, par. 2.)

Counsel for the *Forehands* also contend that the mortgagee had no authority to adjust the claim on the $8,000 policy for an amount less than that represented by the face of the policy, and that the plaintiffs should account for the full amount of the policy. The policies of insurance were obtained by the *Forehands* after they became the owners of the property and in compliance with the provisions of the mortgage. A failure to obtain the consent to a change of ownership would result in invalidating the policies. The Platteville Realty Company became the owner of the real estate pursuant to the deed from the *Forehands,* and in order to protect its interests it became necessary to procure the requisite insurance. The policies were furnished by the *Forehands* to the mortgagee, and delivered to the insurance companies with the request that the insurance companies consent to the transfer, and such consent had never been obtained. A situation was therefore presented to the mortgagee and the grantee under which they were obliged to act in good faith for the protection of the rights of all parties involved, and it appears to us conclusively that the adjustment effected was not only accomplished in good faith, but that such adjustment constituted a result highly beneficial to all the parties involved, and one with respect to which the *Forehands* cannot complain.

The action being one in equity, and the parties having acted in good faith, in order to do complete justice it is necessary not only that a proper application be made of the

proceeds of the insurance, but that the $10,500 mortgage and the indebtedness secured thereby be reinstated, subject only to any superior intervening equities.

*By the Court.*—That portion of the judgment confirming the application of the insurance moneys to the payment of the $10,500 mortgage is reversed, as is also the direction of the lower court to satisfy such mortgage of record, and said mortgage is hereby reinstated, together with the indebtedness secured thereby. The cause is remanded to the lower court with directions for an accounting in accordance with this opinion, the proceeds of the insurance to be applied upon the payment of the $12,000 mortgage; and for judgment of foreclosure in the usual and ordinary form, and a deficiency judgment against the parties liable therefor.