SCHMEIDER, Appellant, vs. McNETT and another, imp., Respondents.

*May 1—November 5, 1929.*

For the appellant there were briefs by *Stephens & Burns* of Cuba City, and oral argument by *Dwight S. Stephens*.

For the respondents there were briefs by *Kopp & Brunckhorst* of Platteville, and oral argument by *A. W. Kopp*.

ROSENBERRY, C. J. On the part of the plaintiff it is contended that the privilege of extension created by the provisions of the note was for the benefit of the payees. In respect to this contention it is argued by the defendants that the privilege was for the benefit of the makers, and in support of this argument it is urged that, the makers having by the terms of the note the privilege of paying $500 or more on any interest-paying date, any privilege to the payees to extend the note would be ineffectual because the note by its terms might be discharged on any interest date and therefore the privilege of extension must be for the benefit of the makers, and that the language "with privilege of a ten years extension by payees" means that the payees must grant a ten years extension upon the demand of the makers; that the privilege runs to the makers and the extension is to be granted by the payees. It must be frankly conceded that these considerations are entitled to much weight. On the other hand, it is urged that the note runs for an unusually long period—ten years,—and that if the extension privilege be construed as defendants contend it should be, the maturity of the obligation would be extended an additional ten years, making twenty years in all; it being a farm mortgage given for a part of the purchase price of the farm, that this would be a very unusual period for such an obligation to run. It

is further urged that if it had been the intent of the parties that this provision was for the benefit of the makers, much more appropriate language might naturally and properly have been chosen to express that intent. The use of the word "privilege" instead of the word "right" is in itself significant. Bouvier defines privilege as an exemption from such burdens as others are subjected to. In the civil law it apparently had a very different and a much wider meaning. We speak of privilege from arrest, privileged communications, privileges and immunities. In common parlance the word is most frequently used in the sense of permission or license. It is said one has a privilege or license to practice medicine or law, privilege or license to operate a soft-drink parlor, or to do anything which people in general may not do without being privileged or licensed. The word is often used interchangeably with the word "right." The ordinary layman would speak of his right to travel a public way and of a privilege or permission to cross the land of a neighbor. If the privilege was for the benefit of the payees according to the language of the instrument, then what was the purpose or object of the parties in inserting it? It is quite apparent that the instrument was drawn by some one skilled to some extent in the use of legal terms, such as a banker or possibly a lawyer. It is well known that any extension granted by a subsequent holder to the makers without the consent of prior parties may operate to discharge them. Both parties may have had in contemplation the fact that the note and mortgage in question might be sold by the holders or the premises conveyed by the makers, in which event there might be negotiations for extension by subsequent parties. Without the privilege being provided for in the note itself, such negotiations might operate to discharge or affect the rights of subsequent holders or those who might thereafter become obligated to pay the debt, or affect the relation between the subsequent holders and the original

makers. *Fanning v. Murphy,* 126 Wis. 538, 105 N. W. 1056. By the insertion of the clause the whole matter was left open for future negotiations with freedom of action.

If the privilege had been intended for the benefit of the makers, a much more appropriate place to have inserted it would have been at the end of the note by inserting the words, "The makers shall have the right to extend the time of payment for ten years;" or if the language be inserted at the place where it was, the much more natural and appropriate phrasing would have been to say, "with the right of ten years extension." The insertion of the words "by payees" must be given some significance. If it be held that the privilege is for the benefit of the makers, the word "makers" is in effect substituted for "payees." The use of the word "payees," taken in connection with the word "privilege," leads us to the conclusion that the clause was inserted for the purpose of leaving the matter of extension open to further negotiations and for an agreed extension without affecting the relations of the payees or subsequent holders to the makers or those who might subsequently become liable for the payment of the debt. No doubt the draftsman thought it safer to fix a maximum period of extension, otherwise it might be argued that the extension could not be greater than a reasonable time, an indefinite and uncertain period.

The present holders have never consented to the extension. Therefore the declaration of McNett was ineffectual to extend the time of payment and the trial court was in error in holding that the action was prematurely begun. A search of the books has revealed no case which throws light upon the question here presented.

The conclusion at which we have arrived makes it unnecessary to consider other questions raised in the case.

*By the Court.*—Judgment appealed from is reversed, and cause remanded for further proceedings according to law.

FOWLER, J.   I dissent, and feel constrained not only to record my dissent but to express briefly my reasons for it.

The note involved is in terms as follows:

$14,353.                                                190.

Platteville, Wis., Dec. 5th, 1916.

On or before Ten years with privilege of a Ten years extension *by payees* after date Mch. 1st, 1918, promise to pay to the order of Henry Nohns Fourteen Thousand Three Hundred Fifty-three Dollars, at the First National Bank of Platteville, Wis.   Value received, with interest at 5 % per annum after Mch. 1st, 1918, until paid.   Interest payable annually, and if not paid when due will draw interest at same rate as the principal.   Privilege of paying $500 or more at any interest-paying date by giving 30 days' notice.

No. ——. Due ——.                    CHARLES MAUGHAN.

Secured by real-estate mortgage.   BELLE MAUGHAN.

The majority of the court holds that the provision of the note confers no privilege upon the payer of the note, but that such privilege as is expressed runs to the payee.   To me it seems very plain that the language of the note means that the privilege of a ten years extension was granted to the payer of the note by the payee.   The privilege to pay $500 or more at any interest-paying time clearly negatives the idea that the privilege of extension ran to the payee.   The payer is the one to be benefited by an extension.   The privilege involved therefore runs to him.   The situation of the parties to the note shows that this was their intention.   One farmer was selling his farm to another.   The buyer wanted the privilege of extension of time of payment.   The seller was willing to grant it to him.   The seller was not thinking of the law applicable between indorser and indorsee of a promissory note to the effect that if the indorsee extends the time of payment of the note he relieves his indorser from liability as indorser.   It takes a far stretch of imagination to believe that he knew the rule, to say nothing of assuming that he desired to make provision to avoid its application.

And why should the seller desire to avoid the rule? Application of it would operate to relieve him from liability.

I see no force to the distinction the majority opinion makes between the words "privilege" and "right." The two farmers originally involved were hardly equal to drawing lines so fine. But if one has a privilege, he has the right to exercise it as long as it exists. The privilege conferred by the note has never been withdrawn, and whoever acquired a privilege under the terms of the note may still exercise it. The word "privilege" is used in the provision of the note conferring the right to pay $500 principal at any interest-paying time. Assuredly the word "privilege" means right as there used. Is there reason for believing it was used in any different sense in the one place than in the other?

The majority opinion says some weight must be given to the words "by the payees." True. There was only one payee to begin with, Nohns. Use of the plural indicates that Nohns was not only bound to grant the extension, but whoever might through transfer become payee or payees. The payer was granted the privilege as against anybody and everybody into whose hands the note might come.

The effect of the provision as interpreted by the court is that Maughan, the payer, would be allowed an extension of the note in case of its sale by Nohns, the payee, if he, Nohns, and the purchaser from him and subsequent purchasers should all agree to the extension. But Maughan would get the extension in such case if nothing at all were said. The provision under such interpretation confers no right or privilege upon anybody. It is meaningless. It is nothing.

The majority opinion says that much more appropriate language could have been used to convey the meaning that the privilege of extension was granted to the payer. Maybe so; but it is equally true that much more appropriate language could have been used to convey the meaning given to the language by the court. To convey that meaning the idea

should have been expressed thus: "The payee hereby agrees that the payer will be allowed a ten-year extension of this note at the due date if he wishes it in case the payee and all other parties to the note shall then agree to such extension." All which, as above suggested, goes without saying. The payer would get an extension as of course if everybody in any way concerned should agree to give it to him. The judgment should be affirmed.

ESCHWEILER, J. (*dissenting*). The note here involved begins: "On or before ten years with privilege of a ten years extension by payees after date Mch. 1st, 1918, promise to pay to the order of Henry Nohns;" it ends: "Privilege of paying $500 or more at any interest-paying date by giving 30 days' notice."

With what I think is the strained and unnatural construction given by the majority opinion to the first of the above quoted clauses I cannot agree.

It cannot be questioned but that the privilege of making partial payments before maturity given by the final clause above quoted is a privilege given to and resting in the person or persons obligated to pay the note, although there are no names, designations, or pronouns to that effect inserted. No one, however, could reasonably contend, or would be listened to for a moment, either at law or in equity, that such was not a right given by the original taker of the note to the maker, and any one obliged to pay because of standing in his shoes.

Although there is a similar omission of names, designations, or pronouns in the first clause, yet it is very clear to me that it was intended thereby to give to the person obligated to pay the note the same kind of a privilege to extend the period of payment as it was in the latter clause to give the right or privilege of making the partial payments.

I can see nothing more strange in granting to the persons obliged to pay this note an additional ten years than in fixing the original period at the long period of ten years; the extension period being no more unusual than the original period.

That other language might have been much more appropriately used in such an instrument may be cheerfully conceded, but if the last clause were before us now for consideration, much the same criticism of its language could be made as is made in the majority opinion to the first clause; but nevertheless only one result could be reached, viz. that any one obliged to pay might do so before maturity.

The use of the word *"by"* in the phrase "by payee," following the word "extension," does not complicate the situation as I view it. Any grant of extension of time for the payment must be *"by"* the one to whom the payment is to be made. The privilege, however, of obtaining and benefiting by such extension is of course "in" or "to" the one by whom the payment must be made.

It is not questioned that it is the law in this state that when the original mortgagor sold to the McNetts and they assumed the payment of the mortgage, an assumption carried on by the present respondent, that, at least as between Maughan and the McNetts, the McNetts became the principal debtors. *Fanning v. Murphy,* 126 Wis. 538, 544, 105 N. W. 1056; *Lichtstern v. Forehand,* 181 Wis. 216, 227, 194 N. W. 421. See 21 A. L. R. 429. Not only by law is such assumption recognized, but plaintiff, the present holder, most emphatically recognizes it by asking for a deficiency judgment against McNett. That being so, no known rule of law, and it would be unthinkable in equity, would permit Maughan to afterwards traffic with such privilege to his personal benefit with some third person, or even with the holder of the note, and assign or forego, for a valuable considera-

tion to him alone, such option or privilege to extend the note to the prejudice of the persons assuming and agreeing to pay to his relief the mortgage.

I think that plaintiff, by foreclosing the mortgage and asking for a deficiency judgment against McNett because the latter had assumed the obligation to pay this note, made himself a party to the transaction and ought not now to be heard to say that the four corners of the note did not apply as to the privileges and rights of any one required to pay, either as original maker or by subsequent assumption, but did apply as to such person's liabilities and obligations on the same note.

I am authorized to state that Mr. Justice FRITZ joins in this dissent.