MUELLER, Respondent, vs. JAGERSON FUEL COMPANY, imp.,
Appellant.

*November 13, 1930—February 10, 1931.*

454

*Geo. E. Robinson* of Oconomowoc, for the appellant.

For the respondent there was a brief by *Knuese & Knuese* of Milwaukee, and oral argument by *William B. Knuese.*

The following opinion was filed December 9, 1930:

ROSENBERRY, C. J. The facts in this case are not in dispute, but the contention made on behalf of the defendant Jagerson Fuel Company raises an interesting question of law. The defendant contends that by the provisions of the Negotiable Instruments Act the note was discharged when the plaintiff, the maker thereof, became the owner of it on September 11, 1929. The particular provision relied upon is as follows:

"A negotiable instrument is discharged: (5) When the principal debtor becomes the holder of the instrument at or after maturity in his own right." Sec. 117.37, Stats.

That the extinguishment of the debt extinguishes the mortgage cannot be denied. See *Doyon & Rayne L. Co. v. Nichols,* 196 Wis. 387, 220 N. W. 181, and cases there cited. Nor can it be said that the plaintiff was not the person primarily liable on the instrument by its terms. (Sec. 116.01.) It is the contention here that because the Negotiable Instruments Act fails to recognize the relationship of surety and principal, the act supersedes the law as it stood prior thereto and hence the law of suretyship no longer applies to nego-

tiable instruments. It has been so held. *Union Trust Co. v. McGinty,* 212 Mass. 205, 98 N. E. 679; *Jameson v. Citizens Nat. Bank,* 130 Md. 75, 99 Atl. 994; *Bradley Eng. & Mfg. Co. v. Heyburn,* 56 Wash. 628, 106 Pac. 170; *Oklahoma State Bank v. Seaton,* 69 Okla. 99, 170 Pac. 477; *Lumbermen's Nat. Bank v. Campbell,* 61 Oreg. 123, 121 Pac. 427; *Richards v. Market Exch. Bank,* 81 Ohio St. 348, 90 N. E. 1000; *Merchants' Nat. Bank v. Smith,* 59 Mont. 280, 196 Pac. 523.

The holding of these cases is well epitomized in the case last cited, where the court said:

"If the primary purpose of this act was to secure uniformity in the law of negotiable instruments, as is generally conceded to be the fact, it is inconceivable that the failure of the act to mention suretyship is to be charged up merely as a *casus omissus.* It seems clear to us that it was the purpose of the legislation to supersede the law of suretyship as theretofore applied to negotiable instruments, and to substitute therefor the law as declared by the act itself."

The matter is not, however, one of first impression in this court. In *State Bank of La Crosse v. Michel,* 152 Wis. 88, 139 N. W. 748, 1131, the very question raised here was presented to the court. It was claimed in that case that by virtue of the provisions of sec. 1679—1, sub. 4*a*—now sec. 117.38 (4a),—which provides that a party secondarily liable is discharged if the holder gives up or applies collateral security to other purposes, the defendant was discharged because the plaintiff had applied collateral turned over to him by the principal debtor to the payment of other debts. It was conceded that if the language of the section were applied literally, such would be the result. But the court said that the purpose of the act was to simplify and make uniform the law relating to negotiable instruments and "not to make radical changes in long established and fundamental principles," and held that the defendant surety was released *pro tanto* and not absolutely. Although a different phase of the law

of suretyship was presented in that case, the court took the position that the law of suretyship was not superseded. If it applies in one particular to affect the literal wording of the statute it applies equally in other respects. There was a strong and vigorous dissent in that case based upon arguments made in behalf of the defendant company in this case. What was said in *State Bank of La Crosse v. Michel* with respect to the discharge of a party is logically as applicable to the matter of the discharge of the instrument. Unless we are to overrule *State Bank of La Crosse v. Michel,* we must overrule the contention of the defendant company in this case. That case was decided in 1913. No effort has been made by the legislature to alter or modify the rule of that case, and while the conclusion there reached is out of harmony with the conclusion reached in other jurisdictions, we are not inclined to overrule it. See generally upon this question, Suretyship at "Law Merchant," 30 Harvard Law Review, 141; Brannan's Negotiable Instruments Law, 721, 726 *et seq.,* discussion and cases cited.

The defendant company does not contend that as between the plaintiff and the defendant Wendelin Schneider plaintiff is not the surety and Schneider the principal debtor, nor is it denied that defendant company's judgment debtor took the premises subject to the mortgage and so charged with its payment. The defendant company stands squarely upon the proposition that by becoming the holder of the note in question the plaintiff discharged it.

While *Fanning v. Murphy,* 126 Wis. 538, 105 N. W. 1056, was decided before the adoption of the Negotiable Instruments Act, it fixes the relation of the parties as between themselves and recognizes the right of one who is liable as a surety under circumstances very similar to those in this case, to enforce payment of the obligation against the property which was mortgaged to secure it, and personally against a subsequent grantee who assumed and agreed to pay the debt. That doctrine has been consistently adhered to. *Schmeider*

*v. McNett,* 199 Wis. 592, 227 N. W. 294. See, also, 21 A. L. R. 429. Buying the note and mortgage by the maker for the purpose of asserting the equities which existed in his favor as against Schneider and those who held under and through him, did not discharge the instrument, and the judgment is right.

While the conclusion which we have reached modifies the literal terms of sec. 117.37 (5), it is the necessary result of the holding in *State Bank of La Crosse v. Michel, supra.* But we go no further than to hold that the original maker may preserve the instrument for the purpose of working out intervening equities in his favor, which permits the plaintiff to subject the pledged property to the payment of the debt and to recover any deficiency against Schneider, who was as to the plaintiff a principal debtor.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 10, 1931.